No. 33,647

The State of Kansas, *Appellee,* v. Ben J. Townsend, *Appellant.*

(73 P. 2d 982)

Opinion filed December 11, 1937.

*Thomas F. Wells,* of Olathe, and *James D. Howell,* of Kansas City, for the appellant.

*Clarence V. Beck,* attorney general, and *W. C. Jones,* county attorney, for the appellee.

The opinion of the court was delivered by

Harvey, J.: Ben J. Townsend was tried in the district court of Johnson county and convicted of manslaughter in the fourth degree. He has appealed, and contends the court erred in the admission of evidence, in permitting a too extended cross-examination of a witness, in refusing certain instructions requested, and in giving certain instructions.

Briefly, the charge was that on a date named, and while driving his automobile on a state highway, he unlawfully, feloniously, willfully, with culpable negligence, drove and operated the automobile in which he was riding at a speed greater than was reasonable and proper, having regard to the traffic and condition of the highway, and crosswise of the highway, into the path of an approaching motor

car driven by Lester Douglas, who, by reason thereof, received bodily injuries which caused his death. The evidence tended to show that state highway No. 10 east of De Soto is paved with a concrete slab 20 feet wide, with shoulders several feet wide on each side of the slab; that a short distance east of the town of De Soto it crosses Cedar creek, and soon thereafter ascends a grade about 3,000 feet long; that near the bottom of the grade there is a turn to the left in a northeasterly direction, and near the top of the grade there is a turn to the right, to the east. Douglas lived at De Soto. On the morning of October 25, 1935, he started to drive east on this highway in his Ford V-8 automobile. Shortly after crossing the Cedar creek bridge, and near the foot of the grade, he passed a truck going in the same direction and pulled back to the right-hand, or south, side of the pavement and proceeded up the grade. The time was about eight o'clock in the morning. There had been some rain the previous night and the pavement was damp; some witnesses said it was slippery. Near the crest of the hill his car collided with one driven by appellant. Appellant had formerly lived at De Soto, but for a year or more had lived at Kansas City, Mo. On the day in question he and his wife and a Mr. Aulls started in his Packard car from Kansas City to drive to or near De Soto. Several persons who met him as he proceeded westward testified that he was driving pretty fast, and at times partially on his left-hand side of the pavement. As he came west to the crest of this grade and started down, Douglas was nearing the crest of the grade from the west on his own right-hand side of the pavement. Defendant turned his Packard automobile sharply to the left across the pavement in front of the Douglas car in such a way that the front of the Douglas car struck the right-hand side of defendant's car. The force of the collision drove the Douglas car off the pavement to the right. It came to a stop on the shoulder, the front end in a shallow ditch, headed to the southeast. Defendant's car was turned around by the impact, first to the east, then to the north, and stopped, with its rear wheels on the pavement, the front wheels on the north shoulder, and headed in a northwesterly direction. The front of the Douglas car had been driven back and one of the right-hand doors of defendant's car had been knocked off. Douglas sustained personal injuries which resulted in his death. Defendant had a finger hurt in some way and sustained some body bruises. His wife was somewhat more seriously shocked and bruised. It does not appear that

Mr. Aulls sustained injury. Several persons reached the scene of the casualty within a few minutes. Some of these observed that defendant appeared to be under the influence of intoxicating liquor, and a bottle of corn whisky was found on the shoulder of the highway a few feet in front of his automobile. Other pertinent facts will be mentioned in the discussion of the legal questions presented.

Douglas, seriously injured, was taken to the office of Doctor Pearson at DeSoto. He was unconscious, had a swelling over his left eye and a v-shaped cut in the center of the swelling. Doctor Pearson and his nurse, Miss Gaynor, treated him as best they could. He died about 12:30 o'clock that day, at a hospital, from injuries received in the collision. Appellant and his wife were taken to Doctor Pearson's office. There Miss Gaynor wrapped appellant's injured finger. He received no other medical attention. His wife, not seriously injured, received first-aid treatment. Later Doctor Pearson sent his bill to appellant for the treatment given him and his wife. The bill was paid.

Called as witnesses for the state, both Doctor Pearson and Miss Gaynor, in answer to questions, testified that while appellant was at the doctor's office they observed his condition and it was their opinion he was under the influence of intoxicating liquor. This was admitted over the objection that the information acquired by the doctor and his nurse was privileged under G. S. 1935, 60-2805. Appellant complains of that ruling. We first note that the testimony of these witnesses on this point was cumulative only. While there was some conflict in the testimony of other witnesses, there is an abundance of testimony to justify a jury and trial court in concluding appellant was under the influence of intoxicating liquor at the time when first observed after the cars collided, and later at DeSoto. But, passing that, was it error for the court to admit the testimony above mentioned of the physician and his nurse? The weight of authority is to the contrary. In 5 Chamberlayne on the Modern Law of Evidence, the rule is thus stated:

"It may be stated, generally, that [to be privileged] the knowledge must be such as was acquired as a result, and in the line, of professional employment or duty in the proper treatment of the patient. . . . In general, under these statutes, testimony will be received of any communication made or information acquired which is not of a confidential nature." (p. 5306.)

Wigmore, in his work on Evidence (Vol. 4, 2d ed., §§ 2380 to 2391), treats the subject historically and from many phases. Referring to statutes such as we have, it is said (§ 2382):

"The confidence which is protected is that only which is given to a professional physician during a consultation with a view to a curative treatment; for it is that relation only which the law desires to facilitate."

In 70 C. J. 440 it is said: ". . . but it [the privilege] should not be construed to apply to matters of evidence not coming clearly within its provisions." And at page 443: "In order to render a physician incompetent, the information which he is called on to disclose must have been acquired in his professional capacity while attending the patient." And at page 444: "The privilege does not prohibit a physician from testifying in any and all cases in which his patient may be a party; he is only prohibited from testifying as to any confidential communication properly entrusted to him in his professional capacity, which is necessary and proper to enable him to perform his duty."

In the treatise on the question in 28 Ruling Case Law it is said:

"The statutes of the various states regarding the disqualification of physicians to testify do not as a rule make that disqualification general, but limit it to information acquired by them in attending patients in a professional capacity, and necessary to enable them to prescribe for their patients or otherwise discharge their professional duties." (p. 536.)

In *K. C., Ft. S. & M. Rld. Co. v. Murray*, 55 Kan. 336, 40 Pac. 646, an injured brakeman made a statement to the surgeon who treated him with respect to the position he occupied immediately preceding the accident. It was held this was not confidential or privileged within the meaning of the statute; and on page 343 it was said:

"The statute does not cover communications made by the patient other than those that relate to the disease or ailment for which the physician was called to prescribe or the surgeon to treat." (Citing *Cooley v. Foltz*, 85 Mich. 47, 48 N. W. 176.)

In a later case, *Perry v. Hannagan*, 257 Mich. 120, 241 N. W. 232, that court had before it the same legal question we have here, and it was held the testimony of the physician who gave first-aid treatment to one injured in an automobile collision that he noticed the odor of liquor on the patient's breath, was not privileged. In the annotation to this case, 79 A. L. R. 1131, there appears to be some conflict of authorities on this point. Our case, *supra*, harmonizes with the Michigan cases, and with the purposes of our statute (G. S. 1935, 60-2805), as shown by the general authorities above cited. Other of our cases to the same effect are *Clark v. State*,

8 Kan. App. 782, 784, and *Armstrong v. Street Railway Co.*, 93 Kan. 493, 502, 503, 144 Pac. 847.

Appellant cites *Patterson v. Cole,* 67 Kan. 441, 446, 73 Pac. 54, as being opposed to the rule above stated; but it cannot be so regarded. In that case the ruling of the trial court turned upon whether the doctor was still plaintiff's physician at the time concerning which he testified, rather than whether his testimony concerned a matter which would be privileged under the statute. The jurist who wrote the opinion of this court had written the opinion in the Murray case, *supra,* and yet the earlier case was not referred to. This tends to show the point ruled on in the earlier case was not regarded as being before the court. Appellant also cites *Bruington v. Wagoner,* 100 Kan. 10, 164 Pac. 1057, but that case deals with the waiver of the privilege. He also cites *Linscott v. Hughbanks,* 140 Kan. 353, 37 P. 2d 26, but the testimony sought to be introduced there went directly to diagnosis and treatment, which would be clearly privileged if any privilege of this character exists. Hence, none of our cases cited by appellant tends to overthrow the rule of the authorities first above cited.

Appellant next argues that the court erred in permitting any of the witnesses to testify that he was under the influence of intoxicating liquor. If the fact was observable to those who soon came to the scene of the collision no reason suggests itself to exclude it, any more than to exclude testimony of other pertinent facts.

Appellant complains of the extent to which the court permitted counsel for the state to cross-examine his wife, called as a witness for appellant. In her direct examination, questions were asked of her concerning matters up to the time of the collision of the automobiles. On cross-examination she was asked and answered a number of questions as to subsequent matters, all of which were objected to. These answers disclosed that after she had received first-aid treatment at DeSoto she went with the sheriff and highway patrolman to the county seat and was there placed in jail, but not locked up; that she complained of the treatment of the officers, and for this she had brought a damage suit against the sheriff, which was still pending. Perhaps this testimony went to her attitude as a witness, her animus against these officers who had testified for the state at the trial, and a part of which testimony had been contradicted by her, as well as to show her interest in the outcome of the case being tried. We think it was proper for the state to de-

velop those matters. The extent to which they should be gone into is a matter which rests largely within the judicial discretion of the trial court. There is no reason to say that discretion was abused here.

Appellant complains the court refused to give a requested instruction to the effect that the information contained within it the charge of the lesser offense of careless driving, which is a misdemeanor. Under the evidence in this case we think such an instruction would have been improper.

Appellant complains of an instruction given, to the effect that defendant was not on trial for driving an automobile while under the influence of liquor, and that evidence received on this question should be considered by the jury only as it bears upon the question of whether or not the defendant was guilty of culpable negligence. We think the instruction dealt fairly with that phase of the testimony. Embodied in the instruction was this sentence:.

"You are advised that proof, beyond a reasonable doubt, that defendant had imbibed intoxicating liquor before, and that he was under the influence thereof at the time of said accident, would be prima facie evidence of his inability to be properly qualified to operate his car at such time."

Appellant concedes this is correct as an abstract statement of law, but contends that it was inappropriate here for the reason that there was no evidence that he had imbibed intoxicating liquor before the collision. He and his wife both testified that he had not done so. Perhaps there were other witnesses whose testimony tended to corroborate that. The fact remains, however, that there is substantial testimony, which the triers of fact could not be blamed for believing, that immediately after the collision it appeared he was under the influence of intoxicating liquor. If so, he must have imbibed it before the collision; hence, it cannot be said that there was no basis for this portion of the instruction.

Some complaints are made of other instructions. All of these have been carefully examined, but we find nothing wrong with any of them. The record indicates appellant had a fair trial and was properly found guilty.

The judgment of the court below is affirmed.