No. 48,562

STATE OF KANSAS, *Appellee,* v. WAYMAN L. GEORGE,
*Appellant.*
(575 P.2d 511)

Opinion filed February 25, 1978.

*Stanley R. Juhnke,* of Dinges, Gottschalk, Bolton & Juhnke, of Hutchinson, argued the cause and was on the brief for the appellant.

*Kenneth R. Heer,* county attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: This is a direct appeal by the defendant, Wayman L. George, from his conviction for operating a vehicle while he was under the influence of intoxicating liquor, in violation of K.S.A. 8-1567 (now K.S.A. 1977 Supp. 8-1567). After conviction by a jury, George was sentenced to six months in jail, placed on probation, and given a restricted driver's license which permitted him to drive to and from work.

He raises but one point: that it was a violation of the physician-patient privilege, as set out in K.S.A. 60-427, to allow into evidence the testimony of Dr. Lester Donley. The parties have stipulated that George would not have been convicted without the doctor's testimony; thus if the admission of the testimony was error, it was reversible error.

Deputy Sheriff Kerns was the first witness for the state. He testified that he arrested George on the afternoon of July 10, 1975, and took him from the scene to the county jail. George admitted that he had ingested some "Old Charter" that afternoon, but refused to take a blood alcohol test, or the heel-to-toe or finger-to-nose tests. He told the officers that he had struck his head, and he asked them to call his physician, Dr. Donley. When the doctor arrived, the undersheriff brought George into the sheriff's office where Dr. Donley examined him in the presence of Kerns and Deputy Sheriff Maddox.

After the doctor finished his examination, Kerns asked George if he would perform the heel-to-toe and finger-to-nose tests. George agreed to the tests if Dr. Donley would witness them. Kerns then proceeded to administer the tests, first by having George attempt to walk in a straight line by placing the heel to the toe, and next by having him attempt to touch the end of his nose while his eyes were closed. Kerns said that George had quite a problem in placing the heel to toe, and keeping his balance. He was wobbling as he walked. When George closed his eyes and attempted to touch the end of his nose, he fell back in a chair against the wall, and said that no one could do the test.

The state's second witness was Dr. Donley. He was asked what he did in examining the defendant, and what the results of that examination were. At this point defense counsel objected for the reason that the testimony would violate the patient-physician privilege, K.S.A. 60-427. The state contended that the information was not confidential since it was transmitted in the presence of the two officers, whose presence was not "reasonably necessary for the transmission of the information." The trial court overruled the objection.

The doctor then testified that he examined George's head and found no injuries; the pupils of his eyes were equal but he had difficulty in following movement precisely; his heart, blood pressure, and pulse were all within normal limits. Dr. Donley then described George's attempts to perform the heel-to-toe and finger-to-nose tests. In Dr. Donley's opinion, the symptoms he observed were not indicative of a blow to the head or a concussion; in his opinion, George was under the influence of alcohol.

K.S.A. 60-407 sets forth the general rule that:

"Except as otherwise provided by statute (a) every person is qualified to be a witness, and . . . (e) no person has a privilege that another shall not be a witness or shall not disclose any matter . . . and (f) all relevant evidence is admissible."

An exception to this general rule is provided by K.S.A. 60-427 which reads as follows:

"(a) As used in this section, (1) 'patient' means a person who, for the sole purpose of securing preventive, palliative, or curative treatment, or a diagnosis preliminary to such treatment, of his or her physical or mental condition, consults a physician, or submits to an examination by a physician; (2) 'physician' means a person licensed or reasonably believed by the patient to be licensed to practice

medicine or one of the healing arts as defined in K.S.A. 65-2802 in the state or jurisdiction in which the consultation or examination takes place; (3) 'holder of the privilege' means the patient while alive and not under guardianship or conservatorship or the guardian or conservator of the patient, or the personal representative of a deceased patient; (4) 'confidential communication between physician and patient' means such information transmitted between physician and patient, including information obtained by an examination of the patient, as is transmitted in confidence and by a means which, so far as the patient is aware, discloses the information to no third persons other than those reasonably necessary for the transmission of the information or the accomplishment of the purpose for which it is transmitted.

"(b) Except as provided by subsections (c), (d), (e) and (f) of this section, a person, whether or not a party, has a privilege in a civil action or in a prosecution for a misdemeanor to refuse to disclose, and to prevent a witness from disclosing, a communication, if the person claims the privilege and the judge finds that (1) the communication was a confidential communication between patient and physician, and (2) the patient or the physician reasonably believed the communication necessary or helpful to enable the physician to make a diagnosis of the condition of the patient or to prescribe or render treatment therefor, and (3) the witness (i) is the holder of the privilege or (ii) at the time of the communication was the physician or a person to whom disclosure was made because reasonably necessary for the transmission of the communication or for the accomplishment of the purpose for which it was transmitted or (iii) is any other person who obtained knowledge or possession of the communication as the result of an intentional breach of the physician's duty of nondisclosure by the physician or his or her agent or servant and (4) the claimant is the holder of the privilege or a person authorized to claim the privilege for him or her.

"(c) There is no privilege under this section as to any relevant communication between the patient and his or her physician (1) upon an issue of the patient's condition in an action to commit him or her or otherwise place him or her under the control of another or others because of alleged incapacity or mental illness, or in an action in which the patient seeks to establish his or her competence or in an action to recover damages on account of conduct of the patient which constitutes a criminal offense other than a misdemeanor, or (2) upon an issue as to the validity of a document as a will of the patient, or (3) upon an issue between parties claiming by testate or intestate succession from a deceased patient.

"(d) There is no privilege under this section in an action in which the condition of the patient is an element or factor of the claim or defense of the patient or of any party claiming through or under the patient or claiming as a beneficiary of the patient through a contract to which the patient is or was a party.

"(e) There is no privilege under this section as to information which the physician or the patient is required to report to a public official or as to information required to be recorded in a public office, unless the statute requiring the report or record specifically provides that the information shall not be disclosed.

"(f) No person has a privilege under this section if the judge finds that sufficient evidence, aside from the communication has been introduced to warrant a finding that the services of the physician were sought or obtained to enable or aid anyone to commit or to plan to commit a crime or a tort, or to escape detection or apprehension after the commission of a crime or a tort.

"(g) A privilege under this section as to a communication is terminated if the judge finds that any person while a holder of the privilege has caused the physician or any agent or servant of the physician to testify in any action to any matter of which the physician or his or her agent or servant gained knowledge through the communication."

The purpose of the statute is to encourage persons needing medical aid to seek it without fear of betrayal, not to disqualify physicians as witnesses. The privilege, being in derogation of the common law, should be strictly construed, and should not be construed to apply to matters "not coming clearly within its provisions." *State v. Townsend,* 146 Kan. 982, 985, 73 P.2d 1124; and see, also, *Armstrong v. Street Railway Co.,* 93 Kan. 493, 503, 144 Pac. 847; and *Branch v. Wilkinson,* 198 Neb. 649, 256 N.W.2d 307, 312 (1977).

Keeping in mind that the purpose of the statute is to encourage persons needing medical treatment to seek it, and the fact that the statute should be strictly construed, we must look at each of the elements necessary to establish the privilege.

There first must be a "patient," a "holder of the privilege," and a "physician." George complained that he had struck his head. A deputy sheriff testified that he had seen a place over George's eye, a bump or something, which looked like George had hit himself. George asked the officers to call his family doctor. Dr. Donley was then called, and he came to the jail and examined George. Dr. Donley was an osteopathic physician officing and practicing in Kingman. Clearly, George was a "patient" and "holder of the privilege" and Dr. Donley was a "physician" as those terms are used in the act.

We next consider whether there was a "confidential communication between physician and patient" as that phrase is defined within the act. There is no dispute but that Dr. Donley obtained information by examination of the patient. The dispute between the parties to this action arises in determining whether the information was transmitted "in confidence and by a means which, so far as the patient is aware, discloses the information to no third persons other than those reasonably necessary for the transmission of the information or the accomplishment of the purpose for which it is transmitted."

Two law enforcement officers were present in the sheriff's office during the examination. Their presence was not necessary

for the transmission of the information or for the accomplishment of the purposes of the examination. However, there is nothing in the record to suggest that the information obtained by Dr. Donley in his examination of George was disclosed to the officers. The examination was visual, physical, and manual. The doctor did not testify as to any conversation between himself and the patient, nor did he indicate that George said anything during his examination. The doctor examined George's head and his eyes, and checked his heartbeat, blood pressure, and pulse. We conclude that the information which the doctor acquired from his examination of George was in confidence.

After the examination was concluded, the doctor observed the dexterity tests performed by George at the direction of the officers. Both the doctor and the officers were observing George; the doctor was witnessing the tests at George's request. The information he acquired from observing the test performances is not privileged; it was not a confidential communication between patient and physician.

Appellant directs our attention to two New York cases, *People v. Decina*, 157 N.Y.S.2d 558, 569-570, 2 N.Y.2d 133 (1956), and *People v. Singer*, 236 N.Y.S.2d 1012, 1013-1014 (Suffolk Co. Ct. 1962). In the first case a guard was present in the doorway of a hospital room, and overheard the conversation between doctor and patient. In the second, the arresting officer and a second officer were present in the treatment room during the time the physician was treating the patient. In both instances the courts held that the communications were confidential and the privilege applied.

The presence of law enforcement officers at the time of examination and treatment of a prisoner by a physician does not necessarily require a holding that the information obtained by the physician during the examination is not confidential, or that the patient-physician privilege is waived. A patient who is in custody can hardly be expected to ask the arresting officers to leave the jail so that he may be alone with his physician. We hold that in the case before us there was a "confidential communication" between patient and physician, the defendant and his family physician, consisting of the information obtained by the physician during the examination. This information was not transmitted to or through the officers; it was perceived directly by Dr. Donley from his examination of the patient.

The state suggests that the communication falls within the exception set forth in subparagraph (*d*) since this is an action in which the condition of the patient is an element or factor of the defense of the patient. Subsection (*b*) provides that the privilege obtains in civil actions and in misdemeanor prosecutions. There is no privilege under the statute in felony cases. George was charged with a misdemeanor; he entered a plea of not guilty; and at the time Dr. Donley's testimony was proffered, George had offered no evidence as to his physical condition. Judge Gard, in his Kansas Code of Civil Procedure, says:

"Subsection (d) denies the privilege where the patient, or someone claiming through or under him, has brought the mental or physical condition of the patient into issue as the basis for a claim, or as the basis for a defense. The theory is sound. If the patient expects to gain or to escape liability because of his mental or physical condition it is grossly unfair to let him withhold a part of the evidence bearing upon that condition on the ground of privilege.

"The net result is that under this section the physician-patient privilege is reduced to those situations where the condition of the patient is only collaterally in issue and to misdemeanor cases, or where communications between the patient and the physician, in connection with diagnosis or treatment, are relevant only on some issue other than that of the patient's condition." § 60-427, p. 412.

Discussing the same section, Steven P. Flood, in his article, The Physician-Patient Privilege Under the New Code, 33 J.B.A.K. 100, 147, says:

"Subsection (d) is the most radical change in the privilege under the new code. It exempts the privilege from application in any action in which the condition of the patient is a factor in the claim or defense of the patient or any party claiming under or through him or as a beneficiary under any contracts to which the patient was a party. This in effect gives the privilege the same effect that it now has in Workmen's Compensation Cases in Kansas, that is, the privilege is not applicable where the physical or mental condition of the patient is put in issue by the patient. The object is to prevent the use of the privilege to suppress evidence after the legitimate purpose of the privilege has been frustrated by the conduct of the patient or his representative by introducing evidence on his condition.  .  .  ."

We hold that the condition of the patient is not put in issue by a not guilty plea in a misdemeanor case. To hold otherwise would negate the obvious intention of the legislature to extend the privilege to prosecutions for misdemeanors. Subsection (*d*), in our judgment, is applicable in a misdemeanor case only after the patient has offered evidence of his mental or physical condition. This is in accord with the comments of Judge Gard and now Judge Flood.

While the information acquired by Dr. Donley in observing the dexterity tests was not privileged, the information which he acquired through examination of the patient was within the statute and was privileged, and the trial court erred in admitting it over proper objection.

The judgment is reversed.

FROMME, J., dissenting. The defendant was charged by the state with operating a vehicle while he was under the influence of intoxicating liquor. In such case the physical condition of the defendant is in issue. The issue of defendant's physical condition is joined by the plea of not guilty. In the majority opinion it is said subsection (d) of K.S.A. 60-427 is applicable only after the patient has offered evidence of his physical condition. I do not read it that way. Subsection (d) provides there is no privilege under this section in an action in which the condition of the patient is an element or factor of the defense of the patient. Subsection (d) of the statute applies, in my opinion, and the testimony of the doctor as to defendant's physical condition was properly admitted. I would affirm this conviction.

MCFARLAND, J., joins in the foregoing dissenting opinion.