(697 P.2d 896)

No. 57,430

STATE OF KANSAS, *Appellant,* v. RICHARD D. PITCHFORD, *Appellee.*

Opinion filed April 11, 1985.

*Morgan Metcalf,* county attorney, and *Robert T. Stephan,* attorney general, for the appellant.

*Paul D. Hogan,* of Wichita, for the appellee.

Before FOTH, C.J., SWINEHART, J., and FREDERICK WOLESLAGEL, District Judge Retired, Assigned.

FOTH, C.J.: This is an interlocutory appeal taken by the State from the district court's order suppressing the results of the defendant's blood test on the basis of the physician-patient privilege under K.S.A. 60-427.

On May 26, 1984, Butler County Sheriff's officers, responding to a report of a one-car accident on Highway 96, located a wrecked car just off the highway. Upon arriving at the accident site, these officers learned that the driver of the car was not at the scene of the accident. This information was radioed to other officers responding to the accident. One of these additional officers, while driving to the scene, saw a man, later identified as the defendant, Richard Pitchford, walking through a pasture sixty to seventy yards south of the highway. Believing that the man might be the driver, the officer shouted at him to stop. Rather than stopping, the man ran. The officer radioed for assistance and gave chase.

The officer caught Pitchford and, after a struggle, wrestled him

to the ground. Pitchford, who had alcohol on his breath, was wheezing and bleeding badly from lacerations to his head and arm. After other officers arrived, they attempted to stop the bleeding, but Pitchford combatively resisted all efforts to render medical aid. When he continued to struggle and resist medical assistance, the officers handcuffed him and drove him back to the highway, where he was transferred to an ambulance which took him to the hospital,

Once at the hospital, Pitchford violently resisted the emergency room doctor's (Dr. McGovern) attempts to stitch his wounds. Apparently unsure of the cause of this combativeness, the doctor ordered a blood test to determine what Pitchford "had in his system." An officer who had accompanied Pitchford to the hospital then asked whether he could obtain a copy of the blood test results; this request was granted by the doctor. The test indicated Pitchford's blood alcohol content was 0.226 percent.

Pitchford was charged with driving under the influence of alcohol, driving left of center, driving without valid tags, and resisting arrest. He subsequently moved to suppress the results of the blood test. The district court initially denied this motion but, upon reconsideration, it ruled that the physician-patient privilege precluded the State from introducing results of the test into evidence. The State now brings this interlocutory appeal.

We are met at the outset by the defendant's claim that this court has no jurisdiction. The State, under K.S.A. 22-3603, may take an interlocutory appeal from a pretrial suppression order which substantially impairs the State's ability to prosecute the case. *State v. Newman,* 235 Kan. 29, 34-35, 680 P.2d 257 (1984). Here, the suppressed test showed the defendant had a blood alcohol content of 0.226 percent; proof that an accused has a blood alcohol content of 0.10 percent or more makes out a prima facie case of driving under the influence of alcohol. K.S.A. 8-1005(a)(2). If the test results are admissible, the State's case is a strong one; if the test results cannot be introduced, it is substantially weakened. We conclude that we have jurisdiction, and turn to the merits.

The State argues that the physician-patient privilege does not apply in this case because (1) the defendant was not a patient, and (2) the examining doctor was not the defendant's personal physician. These arguments have no merit.

We note preliminarily that K.S.A. 8-1001, the Kansas implied consent statute, does not apply to these facts. Before the provisions of K.S.A. 8-1001 can be invoked, a person suspected of driving under the influence of alcohol must be arrested and the arresting officer must ask the arrestee to submit to a blood or breath test. K.S.A. 8-1001; *State v. Gordon,* 219 Kan. 643, 647, 549 P.2d 886 (1976); *State v. Mezins,* 4 Kan. App. 2d 292, 294, 605 P.2d 159, *rev. denied* 227 Kan. 928 (1980). Here, though the defendant certainly was in custody (he was in handcuffs and not free to go), the sheriff's officers neither arrested him nor asked him to submit to a blood test. Furthermore, the defendant did not consent to the blood test. Blood or breath tests under K.S.A. 8-1001 may only be administered if the arrestee consents.

The district court suppressed the evidence of the defendant's blood test because it found the physician-patient privilege precluded introduction of such evidence. K.S.A. 60-427 provides in part:

"(a) As used in this section, (1) 'patient' means a person who, for the sole purpose of securing preventive, palliative, or curative treatment,' or a diagnosis preliminary to such treatment, of his or her physical or mental condition, consults a physician, or submits to an examination by a physician; (2) 'physician' means a person licensed or reasonably believed by the patient to be licensed to practice medicine or one of the healing arts as defined in K.S.A. 65-2802 in the state or jurisdiction in which the consultation or examination takes place; (3) 'holder of the privilege' means the patient while alive and not under guardianship or conservatorship or the guardian or conservator of the patient, or the personal representative of a deceased patient; (4) 'confidential communication between physician and patient' means such information transmitted between physician and patient, including information obtained by an examination of the patient, as is transmitted in confidence and by a means which, so far as the patient is aware, discloses the information to no third persons other than those reasonably necessary for the transmission of the information or the accomplishment of the purpose for which it is transmitted.

"(b) Except as provided by subsections (c), (d), (e) and (f) of this section, a person, whether or not a party, has a privilege in a civil action or in a prosecution for a misdemeanor to refuse to disclose, and to prevent a witness from disclosing, a communication, if the person claims the privilege and the judge finds that (1) the communication was a confidential communication between patient and physician, and (2) the patient or the physician reasonably believed the communication necessary or helpful to enable the physician to make a diagnosis of the condition of the patient or to prescribe or render treatment therefor, and (3) the witness (i) is the holder of the privilege or (ii) at the time of the communication was the physician or a person to whom disclosure was made because reasonably necessary for the transmission of the communication or for the accomplishment of the purpose for which it was transmitted or (iii) is any other person who

obtained knowledge or possession of the communication as the result of an intentional breach of the physician's duty of nondisclosure by the physician or his or her agent or servant and (4) the claimant is the holder of the privilege or a person authorized to claim the privilege for him or her."

"The purpose of the statute is to encourage persons needing medical aid to seek it without fear of betrayal, not to disqualify physicians as witnesses. The privilege, being in derogation of the common law, should be strictly construed, and should not be construed to apply to matters 'not coming clearly within its provisions.' [Citations omitted.]" *State v. George,* 223 Kan. 507, 510, 575 P.2d 511 (1978). Before the statutory privilege may be sustained, three requirements must be met: (1) There must be a "patient" (who in this case would be the "holder of the privilege") and a "physician"; (2) there must be a "confidential communication between physician and patient"; and (3) either the physician or the patient must have "reasonably believed the communication necessary or helpful to enable the physician" to treat or diagnose the patient's condition. *State v. George,* 223 Kan. at 510.

Putting aside for the moment the question of whether or not the defendant was a "patient," it is clear that, if he was, the latter two requirements are met in the case at bar. "Confidential communication between physician and patient" includes information obtained by the doctor through an examination of the patient. K.S.A. 60-427(a)(4); *State v. George,* 223 Kan. 507, Syl. ¶ 1. The blood test ordered here was an examination of the patient, the results were a "confidential communication," and thus the second requirement was met. See *Gonzenbach v. Ruddy,* 645 S.W.2d 27 (Mo. App. 1982); *Branch v. Wilkinson,* 198 Neb. 649, 256 N.W.2d 307 (1977).

Dr. McGovern's purpose in ordering the blood test was to determine what the defendant "had in his system." Although the doctor did not testify at the suppression hearing, he obviously believed the defendant was under the influence of alcohol or drugs and wanted more information. This information would be helpful in the treatment of the defendant's drug or alcohol-induced condition. In addition, this information may have been helpful in enabling the doctor to prescribe any medication needed to ease the defendant's pain or slow his bleeding. *Cf. State v. Townsend,* 146 Kan. 982, 73 P.2d 1124 (1937) (information not related to the injury, and thus unnecessary for treatment,

is not privileged). Thus, the third condition was met: the examination was reasonably believed to be helpful to the physician in treatment or diagnosis.

The real controversy is over the first of the three requirements. The State concedes Dr. McGovern was a "physician," but first argues that the privilege should not apply because he was not the defendant's *personal* physician. The State is correct in asserting that no privilege exists when the examining doctor is a "disinterested" physician. See *Williams v. Hendrickson,* 189 Kan. 673, 676-77, 371 P.2d 188 (1962); 81 Am. Jur. 2d, Witnesses § 241. A "disinterested" physician, however, is a doctor who examines a person without intending to offer treatment or advice. See *Williams v. Hendrickson,* 189 Kan. at 676-77; *State v. Berry,* 324 So. 2d 822, 828 (La. 1975), *cert. denied* 425 U.S. 954 (1976); *State v. Hollingsworth,* 263 N.C. 158, 160-61, 139 S.E.2d 235 (1964). Here, Dr. McGovern ordered the blood test for purposes of treatment. Though not the defendant's personal physician, McGovern was an "interested" physician. *Cf.* 61 Am. Jur. 2d, Physicians, Surgeons, Etc. § 160 (a doctor in a hospital enters into a physician-patient relationship with every patient brought into the hospital).

The State's main argument is that the defendant was not a "patient" because he neither consulted the physician nor voluntarily submitted to the physician's examination. K.S.A. 60-427(a)(1) defines patient as "a person who, for the sole purpose of securing preventive, palliative, or curative treatment, or a diagnosis preliminary to such treatment, of his or her physical or mental condition, consults a physician, or submits to an examination by a physician." A strict and narrow reading of the statute might support the State's position. The defendant violently resisted medical treatment by both the police and the hospital staff. He did not seek treatment; the sheriff's officers, after handcuffing the defendant, had him transported to the hospital. The officers, and not the defendant, decided medical assistance was needed.

The State's literal reading, however, would render the physician-patient privilege inapplicable to many persons needing medical treatment the most. Persons brought to a hospital unconscious, in severe shock, or otherwise unable to consult or submit to a doctor would not be "patients" under the State's

interpretation. Neither would persons involuntarily committed to various mental health institutions where the sole object is involuntary treatment. Such an interpretation is unreasonable and is not mandated by the statute. "The rule of privilege may apply where a physician attends a person for the purpose of giving professional aid even though the person attended is unconscious or unaware of his presence, does not consent, or actually objects to being treated." 97 C.J.S., Witnesses § 294(e); see *Branch v. Wilkinson,* 198 Neb. 649 (blood test evidence was privileged although the patient was unconscious when blood drawn); *cf. State, In Interest of M.P.C.,* 165 N.J. Super. 131, 137, 397 A.2d 1092 (1979) (interpreting a statute nearly identical to ours, the court concluded that no privilege existed when police took a suspected drunk driver to the hospital both to receive treatment and to obtain evidence of the driver's blood alcohol content).

Determining whether the defendant was a "patient" does not turn on whether he voluntarily consulted a physician. The controlling fact is that the defendant was taken to the hospital for purposes of treatment. See McCormick on Evidence § 99, p. 247, n. 4 (3rd ed. 1984). Here, the officers' testimony indicates they believed the defendant needed medical aid; acting on this belief, they transported him to the hospital. Once at the hospital, Dr. McGovern treated the defendant. For purposes of K.S.A. 60-427, the defendant was a "patient." *Cf. Linscott v. Hughbanks,* 140 Kan. 353, 37 P.2d 26 (1934) (patient admitted to state mental hospital involuntarily; despite this, the court concluded information obtained in examinations conducted for purposes of diagnosis and treatment was privileged).

We conclude that defendant was a patient, the blood test was a communication, and the test was secured for the purpose of diagnosis and treatment. The test results were therefore privileged, and the trial court did not err in suppressing them.

Affirmed.