712 P.2d 792

STATE of New Mexico,
Plaintiff-Appellant,

v.

Paul TEEL, Defendant-Appellee.

No. 8407.

Court of Appeals of New Mexico.

Dec. 10, 1985.

Paul G. Bardacke, Atty. Gen., Elizabeth Major, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Morris Stagner, Dan B. Buzzard, Clovis, Winston Roberts-Hohl, Santa Fe, for defendant-appellee.

## OPINION

GARCIA, Judge.

Defendant was indicted on a charge of fraud in excess of $2,500.00, in violation of NMSA 1978, Section 30–16–6 (Repl.Pamp. 1984). Defendant filed a motion in limine seeking to exclude the testimony of his former wife, Elizabeth Teel, based on the spousal confidential communication privi-

lege of NMSA 1978, Evid.R. 505 (Repl. Pamp.1983). Following a hearing on the motion, the trial court determined that Ms. Teel's testimony was "inextricably intertwined" with privileged communications and granted defendant's motion in limine.

Two issues are presented on appeal:

(1) Whether the proposed testimony of Ms. Teel contained confidential communications proscribed by Rule 505;

(2) Whether the trial court abused its discretion in ruling that Ms. Teel's testimony should be excluded because it would be "inextricably intertwined" with privileged communications.

## FACTS

The case involves an allegedly fraudulent claim made by defendant to Farmers Insurance Group. In December of 1981, defendant reported the loss of a valuable diamond from a gold ring setting. Ms. Teel signed the Proof of Loss, reputedly at the request of her husband. In March of 1982, the insurance company paid defendant $4,750.00 for the claimed loss. The draft was endorsed and cashed by defendant.

Several months later Ms. Teel noticed her husband wearing a new ring with a diamond of the same size, shape and tint as the stone previously reported lost. Due to its distinctive nature, Ms. Teel recognized the diamond as the same stone.

Defendant and Elizabeth Teel had marital difficulties and were subsequently divorced. In March of 1984, Elizabeth Teel contacted Detective Morgan of the Clovis Police Department and reported that her husband had made a fraudulent claim to Farmers Insurance Group. She stated that her motivation in reporting the apparent fraud was to avoid being implicated in criminal wrongdoing. Following an investigation, defendant was charged with fraud. During grand jury proceedings, a Clovis jeweler testified that defendant delivered a diamond to him for mounting on a new setting. The new ring, which had been confiscated from defendant, was identified by the jeweler as the ring he had made for defendant.

Elizabeth Teel's grand jury testimony was limited to three specific facts. The exclusion of her testimony on these matters forms the basis of this appeal. First, Ms. Teel testified that she was present when the claim for the lost diamond was made to the agent for the insurance company and that she signed the Proof of Loss for defendant. Second, she identified her husband's signature from the endorsement line of the $4,750.00 draft. Third, she recognized the diamond in her husband's second ring as the same diamond that had previously been reported lost. The trial court ruled that Ms. Teel could not testify as to these matters under Rule 505.

NMSA 1978, Section 38–6–6 refers to privileged communications between spouses. The statute states in pertinent part:

A. No husband shall be compelled to disclose any communication made by his wife during the marriage, and no wife shall be compelled to disclose any communication made to her by her husband during the marriage.

\* \* \* \* \* \*

D. If a person offers himself as a witness and voluntarily testifies with reference to the communications specified in this section, that is a consent to the examination of the person to whom the communications were made as above provided.

This statute extends a spousal testimonial privilege to *any* communication. Rule 505, however, provides that one spouse may prevent another from disclosing a *confidential* communication, made during the marriage. Thus, the statute is far more comprehensive and seeks to grant a greater privilege than does the rule. The New Mexico Supreme Court has held that any conflict between the rules of evidence and statutes attempting to create evidentiary privileges must be resolved in favor of the rules. *Maestas v. Allen*, 97 N.M. 230, 638 P.2d 1075 (1982). Thus, Section 38–6–6(A), which mirrors the older common law rule that neither spouse could be compelled to disclose a communication made during the marriage, does not govern the court's deci-

sion in this case. *See Ammerman v. Hubbard Broadcasting, Inc.*, 89 N.M. 307, 551 P.2d 1354 (1976) *cert. denied* 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978).

■ In determining whether the trial court erred in excluding Ms. Teel's testimony, the evidence sought to be excluded under the marital privilege must qualify as a confidential communication under Rule 505. This rule was amended in 1980 to eliminate the absolute testimonial privilege which previously existed. *See State v. Wheeler*, 95 N.M. 378, 622 P.2d 283 (Ct. App.1980). The rule defines a confidential communication as one "made privately, and not intended for further disclosure." Rule 505(a)(1). To qualify under the evidentiary privilege there must be a communication and it must be intended to be private. 8 J. Wigmore, *Wigmore on Evidence*, § 2336 at 648 (1961). Thus, our task is to determine whether the excluded testimony was a communication and if so, whether the communication was intended to be private. There is no uniformly accepted judicial interpretation for "communication." Some courts have limited the term to expressions intended by one spouse to convey a meaning or message to the other. E. Cleary, *McCormick on Evidence*, § 79 (2d ed. 1972); *see United States v. Lustig*, 555 F.2d 737, 748 (9th Cir.1977). Yet other courts have broadly construed confidential communications to include acts, facts, conditions and transactions. *McCormick* at 164; *see Arnold v. State*, 353 So.2d 524 (Ala.Cr.App. 1977). In discussing the various constructions given the term "communications", and in criticizing the broad interpretation afforded the term by some courts, Professor McCormick stated:

> [I]t would seem that the privilege should be limited to *expressions* intended by one spouse to convey a meaning or message to the other.
>
> \* \* \* \* \* \*
>
> All extensions beyond communications seem unjustified. The acts thus protected are frequently acts done in furtherance of a crime or fraud, and thus under the principle developed for the cognate privilege for attorney-client communications, should not be protected from disclosure even by direct communication. *McCormick* at 163–165.

■ The 1980 amendment to Rule 505 narrowed the scope of privilege from all communications to confidential communications. It would be inconsistent to suppose that New Mexico narrowed the application of the rule on one hand, but intended to broaden its scope on the other. Thus, we determine that the communications contemplated under the rule should be limited to utterances or expressive acts intended by one spouse to convey a meaning or message to the other. While we adopt a principle that a communication may include an expressive act, not every act observed by defendant's spouse is a communication. *Coleman v. State*, 668 P.2d 1126 (Okl.Cr. 1983). In *Coleman*, defendant's wife testified that on the day of the homicide with which her husband was charged, defendant came home, retrieved a shotgun and shells from their bedroom, left in a white camper pickup and returned at a certain time. On appeal, the court found that the wife's testimony did not violate the confidential communications privilege because the privilege did not extend to matters learned through observation of the spouse's non-communicative acts which were not intended to be confidential. *See also State v. Fowler*, 101 Idaho 546, 617 P.2d 850 (1980) (knowledge of the possessions of one's spouse and their location is generally not a spousal communication protected by this privilege).

■ The second prong of the Rule 505 test is whether the communication was intended to be confidential. Any presumption of privacy granted a marital communication is negated by proof of the presence of a third party at the time the communication was made, or proof that the information communicated was meant to be conveyed to a third person. *Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954). Observations by one spouse of the non-communicative acts of the other, especially acts which are open to the view of others, are not confidential communica-

tions. *State v. Garland*, 617 S.W.2d 176 (Tenn.Cr.App.1981) (the fact that defendant owned certain items of clothing is not by nature confidential; a shirt and pants publicly worn and observed by many is obviously not confidential). In accord with this two prong test, we review Ms. Teel's testimony.

## IDENTIFICATION OF THE DIAMOND

■ Defendant wore the second ring publicly. The ring had been observed by others, and the diamond had been observed by the jeweler who mounted it on a new setting after defendant reported it lost. Ms. Teel's observation of the diamond in her husband's second ring was not a communication nor could the act of wearing the ring have been intended to be confidential. *See State v. Garland.* Ms. Teel was not asked to relate any statements or expressions which defendant may have made concerning the diamond, nor was there any indication that the wearing of the diamond as an item of jewelry was a secret. Ms. Teel's testimony concerning the diamond is not subject to the Rule 505 privilege.

## IDENTIFICATION OF DEFENDANT'S SIGNATURE

■ Ms. Teel was shown the negotiated draft and asked if she could identify the signature. She said it was her husband's. The identification of defendant's signature does not constitute a confidential communication. The signature was not an expression or an expressive act intended to convey a message from defendant to his wife. Any message that would be conveyed by the signature would be directed to the bank and to Farmers Insurance Group. If the signature could be deemed a communication, the fact that it was meant to be seen by third parties destroys any claim of confidentiality. In *People v. Saidi-Tabatabai*, 7 Cal.App.3d 981, 86 Cal.Rptr. 866 (1970), the court found that the testimony of a husband that certain handwriting was his wife's did not violate the privilege against disclosure of confidential communications. Even assuming that the contents of the writing are confidential, the recognition of a spouse's handwriting does not fall within the privilege. "Every court that ever analyzed the problem has held that a spouse may identify the handwriting of the other spouse." *Id.* 7 Cal.App.3d at 984, 86 Cal. Rptr. at 869. The trial court's determination that Ms. Teel could not testify as to her identification of her husband's signature was error.

## THE FILING OF THE CLAIM

■ During the grand jury, Ms. Teel testified that someone from the insurance company came to the Teel house, and she signed the claim for the lost diamond. She signed the form for her husband because he was not there. During the hearing on defendant's motion in limine, the trial court stated that because defendant intended that his "communication" be passed on to a third person, specifically the insurance agent, any marital privilege had been waived. We agree with the court's analysis. *See Resnover v. State*, 267 Ind. 597, 372 N.E.2d 457 (1978) (if a communication from a husband to a wife is intended by the husband to be transmitted by the wife to a third person, there is no privilege because there is no confidentiality). While the court correctly ruled that the privilege was not applicable to the filing of the claim, the court did find that the privilege was applicable to the other portions of Ms. Teel's testimony, and thus, excluded *all* testimony out of a concern that the admissible testimony might by tainted by inadmissible evidence. Although certain communications of defendant voiced to his former wife during their marriage may be subject to exclusion under Evid.Rule 505, the trial court's order of exclusion was too sweeping in its scope. The order had the effect of improperly excluding some admissible testimony of defendant's ex-wife.

## ABUSE OF DISCRETION

Trial judges have broad discretion in determining the admissibility of evidence. *State v. Day*, 91 N.M. 570, 577 P.2d 878 (Ct.App.1978). A trial court's determina-

tion of admissibility will not be disturbed on appeal absent an abuse of discretion. *State v. Worley*, 100 N.M. 720, 676 P.2d 247 (1984). The trial court demonstrated care, concern and caution in dealing with this issue. After receipt of briefs and hearing oral arguments, the court conducted independent research, and directed the attorneys to present additional arguments. Defense counsel urges us to commend the trial court for proceeding with care and circumspection in this case. This we do. Nevertheless, we conclude that the trial court erred in excluding the testimony of defendant's ex-wife. We therefore reverse the court's order which excludes the presentation of her testimony.

IT IS SO ORDERED.

DONNELLY, C.J., and ALARID, J., concur.