212 N.J. Super. 644 (1986)
515 A.2d 1280
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JULIA ALSTON, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted September 9, 1986.
Decided October 10, 1986.
*645 Before Judges BRODY, LONG and D'ANNUNZIO.
George L. Schneider, Essex County Prosecutor, for appellant (Leslie Stolbof Sinemus, Assistant Prosecutor, on the brief).
*646 Alfred A. Slocum, Public Defender of New Jersey, for respondent (Christine M. Cook, Assistant Deputy Public Defender, of counsel and on the brief.
The opinion of the court was delivered by D'ANNUNZIO, J.S.C. (temporarily assigned).
This is an appeal, upon leave granted, from the trial court's denial of the State's motion to compel disclosure of defendant's medical records. The record on appeal does not include a notice of motion or supporting affidavits. We presume the application was made orally at a status conference.
Defendant is under indictment for murder, aggravated arson and other related crimes, all arising out of the death of her husband on September 1, 1985. The victim apparently died as the result of a fire allegedly set by defendant. The murder count is phrased in terms that implicate the death penalty.
On September 2, 1985, defendant gave a statement to the police. Prior to giving the statement, defendant was advised that she was under arrest for the murder of her husband and that she was also charged with aggravated arson. In her statement, defendant admitted that she had killed her husband, gave some details and explained the surrounding circumstances. Defendant explained that she killed him because she tired of his physical and emotional abuse. Defendant alleged that on one occasion her husband had stabbed her in the stomach and as a result she went to Martland Hospital because the wound became infected. She told the police that when "he used to beat on me they used to put me in the crisis intervention ward at Beth Israel Hospital."
In opposing the State's motion, defendant relies upon the patient-physician privilege. N.J.S.A. 2A:84A-22.2. Defendant sharpens her argument by contending that the State's application is premature because the defense has made no decision regarding the use or applicability of the so-called battered-woman's defense. This appears to be the position accepted by the *647 trial judge. See State v. Kelly, 97 N.J. 178 (1984) for an analysis of the battered-woman's syndrome as an element of self-defense.
In our view, the privilege created by N.J.S.A. 2A:84A-22.2 is applicable, but subject to subsequent sections of the same act withdrawing the privilege under certain circumstances. One of those subsequent sections is N.J.S.A. 2A:84A-22.4 which provides in pertinent part:
There is no privilege under this act in an action in which the condition of the patient is an element or factor of the claim or defense of the patient ...
If defendant testifies at trial and describes physical and emotional abuse suffered by her at the hands of her husband, that testimony would be admissible and highly probative, at least to establish a degree of criminal homicide less than murder, State v. Kelly, 97 N.J. 178 (1984); State v. Bowens, 205 N.J. Super. 548 (App.Div. 1985); or, to establish self-defense. State v. Kelly, supra. If defendant so testifies, the exception to the privilege would clearly apply because the word defense as used in the exception signifies facts that would reduce the crime charged to a lesser included crime, as well as facts that would preclude a conviction. The State would be entitled, at trial, to medical records generated by the alleged episodes of abuse. Defendant's position appears to be that the State is not entitled to those records at this stage of the case, but is entitled to them only at trial if defendant chooses to base a defense upon the fact of spousal abuse, or, at best, before trial if defendant makes a pre-trial election to rely on such a defense. See State v. George, 223 Kan. 507, 575 P.2d 511 (Sup.Ct. 1978) which ruled that the exception applies only after the patient has offered evidence at trial of his physical or mental condition.
We disagree and reverse. Defendant's argument ignores reality. Her statement to the police virtually assures that alleged spousal abuse will be a defensive element or factor at trial. Although defendant is not a lawyer, her allegations of *648 spousal abuse were offered by her as a rationale, an exculpatory explanation, of the acts she is accused of committing. Barring a Miranda problem, which is not apparent on the record before us, the statement will probably be admitted into evidence in its entirety on the State's case. We recognize the double edge to the spousal abuse: it provides the State with a motive, and the defendant with a defensive excuse. However, in these circumstances, its value to the defendant is clearly greater because it would be the basis of a mandatory jury instruction regarding the availability of the lesser included offenses of aggravated manslaughter and manslaughter. N.J.S.A. 2C:11-3. State v. Kelly, supra. The fact that the spousal abuse allegations were made in the context of a police interrogation does not preclude application of the exception. Defendant had a right not to give a statement and a right to terminate the interrogation. She exercised neither of these rights.
Defendant's argument also ignores the differences between civil and criminal actions in the area of pre-trial preparation. Discovery in criminal cases is limited. R. 3:13-3. Defendant is not required to give pre-trial notice to the State of any defense, strategy or tactic except as specifically required by R. 3:11-1 (alibi), R. 3:12 (insanity or mental defect) and R. 3:12A (various statutory defenses). Defendant is not obligated to give the State advance notice of her intention to testify or not testify. Therefore, except in those cases specified in the rules, a defendant is not required to commit to a defense or strategy until the State has rested. When pre-trial investigation generates facts supporting potential defenses which will inevitably get to the jury, or upon which it is highly probable that defendant will rely, it is unfair to require the State to wait until trial before it is allowed access to information concerning those facts possessed by third parties.
In this case the jury will have defendant's statement, including the exculpatory material, as part of the State's case. The spousal abuse information is a factor in her defense because of its tendency to support a conviction of a lesser degree of *649 homicide. It would be fundamentally unfair not to give the State access to records and information which would tend to corroborate or refute incidents of spousal abuse. N.J.S.A. 2A:84-22.4 is designed to prevent that unfairness. Cf. Arena v. Saphier, 201 N.J. Super. 79, 89 (App.Div. 1985).
New Jersey decisions construing this exception are few. Stempler v. Speidell, 100 N.J. 368 (1985); Lazorick v. Brown, 195 N.J. Super. 444 (App.Div. 1984); Piller v. Kovarsky, 194 N.J. Super. 392 (L.Div. 1984). In each case, the court ruled that N.J.S.A. 2A:84A-22.4 rendered the patient-physician privilege inapplicable. Those cases are factually distinguishable from the case at bar. They were medical malpractice actions in which the plaintiffs, having voluntarily instituted suits in which their physical conditions were in issue, sought to prevent their non-party treating physicians from giving testimony for, or conferring with, defendants. The extensive pleadings and pre-trial discovery in civil actions are additional factors distinguishing these decisions from the criminal prosecution before the court.
The order appealed from is reversed. The prosecutor shall be afforded access to the Martland Hospital record of defendant's treatment occasioned by the alleged stabbing and the records of the crisis intervention ward at Beth Israel Hospital.