921 P.2d 322

STATE of New Mexico, Plaintiff–Appellant,

v.

William ROPER, Defendant–Appellee.

No. 16027.

Court of Appeals of New Mexico.

June 19, 1996.

Tom Udall, Attorney General, Max Shepherd, Asst. Attorney General, Santa Fe, for Appellant.

T. Glenn Ellington, Chief Public Defender, Susan Gibbs, Asst. Appellate Defender, Santa Fe, for Appellee.

**1.** The answer brief, the motion to suppress, and the police officer's testimony make overlapping, and sometimes contradictory, statements about

*OPINION*

APODACA, Chief Judge.

1. The State appeals the trial court's order suppressing the results of Defendant's blood test. We determine that the results of Defendant's blood test were protected by the physician-patient privilege, SCRA 1986, 11–504 (Repl.1994). We therefore affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

2. Defendant and a passenger were involved in a vehicular accident. Defendant lost control of his motorcycle when he hit either a pothole or a patch of gravel. Both he and the passenger sustained injuries requiring medical attention. A police officer questioned Defendant at the hospital. The officer testified not only that he smelled alcohol on Defendant's breath and that Defendant had bloodshot, watery eyes, but also that Defendant admitted he had consumed two beers and had been speeding at the time of the accident. At some point, either before or after (or both before and after) the officer arrested Defendant, the officer asked Defendant if he would take a blood-alcohol test.[1] Defendant refused.

3. After Defendant had been treated for his injuries, the officer asked one of the nurses in the emergency room about the blood-alcohol content of the blood test taken by the hospital in the course of diagnosing and treating Defendant. The nurse stated that the tests showed Defendant's blood-alcohol content to be .104. The State later subpoenaed the medical records. Defendant was eventually charged with operating a vehicle while under the influence of alcohol pursuant to NMSA 1978, Section 66–8–102 (Repl.Pamp.1994), and with causing great bodily injury while driving under the influence of alcohol pursuant to NMSA 1978, Section 66–8–101(B), (C) (Repl.Pamp.1994), among other infractions. After arguments before the trial court on Defendant's motion to quash the grand jury indictment and motion to suppress the results of the hospital's blood test, the trial court concluded that,

the sequence of the request and the arrest. The precise timeline, however, is not essential to our analysis.

although the officer had probable cause to arrest Defendant, the results of the test constituted a privileged confidential communication between a physician and a patient under SCRA 11–504. The trial court thus suppressed the test results.

## II. DISCUSSION

4. The material facts are not at issue, and the only dispute arises from the application of SCRA 11–504 and the law to the facts. We therefore review de novo. *See State v. Attaway,* 117 N.M. 141, 144–45, 870 P.2d 103, 106–07 (1994).

5. SCRA 11–504(B) states:

A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of his physical, mental or emotional condition, including drug addiction, among himself, his physician or psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

6. Common law did not recognize the physician-patient privilege. *Trujillo v. Puro,* 101 N.M. 408, 412, 683 P.2d 963, 967 (Ct.App.), *cert. denied,* 101 N.M. 362, 683 P.2d 44 (1984). Consequently, the privilege is in derogation of the common law and must be construed strictly against the asserting party. *State v. Boysaw,* 40 Ohio App.3d 173, 532 N.E.2d 154, 156 (1987). The purpose of the privilege is to encourage a patient to make complete disclosures of his symptoms and conditions to a physician without fear of publication. *Id.; see also* 3 Spencer A. Gard, *Jones on Evidence* § 21:24 (6th ed. 1972). " '[T]he value placed on privacy, manifested both by general concerns for privacy and by the specific concerns for an individual's bodily integrity found in constitutional, statutory, and common law doctrines, suggests a strong policy basis' for the privilege." *Dillenbeck v. Hess,* 73 N.Y.2d 278, 539 N.Y.S.2d 707, 712, 536 N.E.2d 1126, 1131 (1989) (quoting Developments in the Law, *Medical and Counseling Privileges,* 98 Harv.L.Rev. 1530, 1548 (1985)). SCRA 11–504 does not contain any language limiting its application to civil cases. We therefore hold that the privilege applies to all cases, both civil and criminal. *See* 8 John Henry Wigmore, *Evidence* § 2385 (McNaughton rev. 1961) (privilege generally applies to both criminal and civil cases unless rule expressly limits privilege to the latter).

7. For the privilege to apply, the patient must have consulted the physician for treatment or diagnosis looking toward treatment. SCRA 11–504(B). Here, there is no question that Defendant consulted a physician to treat his injuries sustained in the motorcycle accident. There is likewise no dispute that Defendant was a patient. *Cf. State, In the Interest of M.P.C.,* 165 N.J.Super. 131, 397 A.2d 1092 (App.Div.1979) (when defendant submitted to a blood test at request of police officer, sole purpose of test was not for treatment or diagnosis and thus defendant was not a patient so as to qualify under the privilege). The only issue in contention is whether the results of the blood test constituted a confidential communication. In addressing whether the results of Defendant's blood test constituted a privileged confidential communication under SCRA 11–504, we will discuss our analysis in three steps: (1) whether the blood test constituted a communication, (2) if so, whether the communication was confidential, and (3) if so, whether the exception under SCRA 11–504(D)(3) negated the privilege.

### A. Did The Blood Test Constitute A Communication Under SCRA 11–504?

8. "Communication" is not defined in SCRA 11–504, and the precise issue of whether the results of a blood test constitute a confidential communication has never been addressed in New Mexico. However, in *In re Doe,* 98 N.M. 442, 649 P.2d 510 (Ct. App.1982), in which communication between patients and psychotherapists was explored, communication under SCRA 11–504 was defined as including "information or knowledge gained by observation and personal examination of the patient." *Id.* at 446, 649 P.2d at 514. The rule was amended in 1990 to include physicians. We see no reason why information or knowledge gained by observation and examination of the patient for treatment or diagnosis by a psychother-

apist should be treated any differently from that gained by a physician, especially when treatment by a physician often includes psychological undertones. *See Medical and Counseling Privileges, supra,* at 1548–51. Therefore, because a blood test given in a personal examination by a physician would provide information to that physician, it follows that the results of the test would constitute a communication under the *Doe* definition. *See State v. Smorgala,* 50 Ohio St.3d 222, 553 N.E.2d 672, 674 n. 1 (1990) (blood test results constituted communication); *State v. Elwell,* 132 N.H. 599, 567 A.2d 1002, 1006 (1989) (same); *Dillenbeck,* 539 N.Y.S.2d at 711–12, 536 N.E.2d at 1130 n. 4 (same); *State v. Pitchford,* 10 Kan. App.2d 293, 697 P.2d 896, 899 (1985) (same); *State v. Dress,* 10 Ohio App.3d 258, 461 N.E.2d 1312, 1316 (1982) (same). *But see Oxford v. Hamilton,* 297 Ark. 512, 763 S.W.2d 83, 84–85 (1989) (blood test results not confidential communication).

9. The State argues that *State v. Teel,* 103 N.M. 684, 712 P.2d 792 (Ct.App.1985), offers a more accurate definition of communication. *Teel* defined communication as "utterances or expressive acts." *Id.* at 686, 712 P.2d at 794. That definition, however, applied to a different rule, SCRA 1986, 11–505 (Repl.1994) (husband-wife privileges), and in a non-professional context. It did not apply to the definition of communication for the psychotherapist-patient privilege offered in *Doe.*

**B. Was The Communication Confidential And Therefore Privileged?**

10. SCRA 11–504(A)(4) defines a confidential communication:

A communication is "confidential" if not intended to be disclosed to third persons other than those present to further the interest of the patient in the consultation, examination or interview, or persons reasonably necessary for the transmission of the communication, or persons who are participating in the diagnosis and treatment under the direction of the physician or psychotherapist, including members of the patient's family.

■ 11. *Doe* held that, to be confidential pursuant to this provision, two conditions must be met: (1) the patient must intend the communication to be undisclosed, and (2) non-disclosure would further the interest of the patient.[2] *Id.* at 446, 649 P.2d at 514.

■ 12. Regarding the first prong, the rule implies that the intent must be expressed to medical personnel involved in the diagnosis or treatment of the patient. Although the rule does not indicate how intent is to be demonstrated by the patient, intent was described in *In re Sherry C. & John M.,* 113 N.M. 201, 207, 824 P.2d 341, 347 (Ct. App.1991), as being manifested by "words or conduct."[3] Here, we believe that Defendant's consent to undergo treatment or diagnosis constituted sufficient conduct to manifest an intent of confidentiality. When a

2. It is not clear from *Doe* whether the Court derived the two-part test from the provision noted above. We do not read the language of the rule as mandating the second prong of the *Doe* test. Instead, we believe the phrase "to further the interest of the patient" refers to "those present," not to whether nondisclosure of the substance of the communication would further the patient's interest. Nevertheless, we agree with *Doe's* two-part test, irrespective of its derivation. A confidential communication in our view would be a communication related to diagnosis or treatment, *see* SCRA 11–504(B); Wigmore, *supra,* at § 2383, that a reasonable person in the patient's circumstances would not want divulged to people other than those listed in SCRA 11–504(A)(4). *See Wigmore, supra,* at § 2381 (confidentiality should be inferred according to circumstances of each case). In other words, and as *Doe* provides, nondisclosure of the communication would further the interest of the particular patient.

3. *Doe,* in contrast, stated that, in order for a communication to be intended as confidential, the intent "must be manifested in some fashion with words or words and conduct [that] lead a psychotherapist to understand or believe that the information obtained was intended to be confidential." 98 N.M. at 447, 649 P.2d at 515. Because words are essential in order to obtain the privilege, according to *Doe's* definition, the patient must preface any disclosures that he wishes to keep confidential with a verbal statement to the effect of, "The following information is confidential," or "Please keep my test results confidential." This interpretation of intent, placing an affirmative requirement on the patient to indicate confidentiality to the physician verbally, is puzzling, especially considering the source relied on by *Doe.* The *Doe* Court borrowed its definition of intent from *In re Estate of Lyman,* 7 Wash.App. 945, 503 P.2d 1127 (1972), *opinion adopted by,* 82 Wash.2d 693, 512 P.2d 1093 (1973) (en banc). The *Lyman* court, however,

patient sees a physician for either (or both) of those purposes, it should be implicit that the information conveyed in the private consultation and examination is exclusively for the patient's eyes and ears, absent the patient's consent. *See Medical and Counseling Privileges, supra,* at 1546 (patient expects communications made to physician to be confidential). Thus, when a patient is privately evaluated by a physician, the conduct of the patient agreeing to the evaluation in itself manifests an intent that any communications made for the purpose of diagnosis or treatment remain confidential. *See* SCRA 11–504(B); *cf. State v. Valdez,* 95 N.M. 70, 72–73, 618 P.2d 1234, 1236–37 (1980) (lawyer-client privilege rule contains virtually identical definition of "confidential;" testimony of lawyer or client cannot be compelled unless nature of communication indicates that confidentiality not contemplated and communication not considered confidential).

■ 13. Regarding the second prong, nondisclosure would further the interest of Defendant because it would prevent others from learning personal information about Defendant's health and well-being. A blood test taken for diagnosis and treatment can reveal a tremendous amount of information about a patient, including the existence of disease, illness, or drug addiction. Keeping the results confidential gives the patient the power to reveal the private information to the persons the patient chooses, reinforcing the privilege's policy of patient autonomy and privacy. For those reasons, nondisclosure of the results of Defendant's blood test here would further his privacy interest. Thus, because both prongs were satisfied, we determine that the results of Defendant's blood test constituted a confidential communication.

C. If Defendant's Blood Test Constituted A Confidential Communication, Did The Officer Have Access To It Under SCRA 11–504(D)(3), An Exception To The General Rule?

■ 14. SCRA 11–504(D)(3) states:

There is no privilege under this rule as to communications relevant to an issue of the physical, mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense, or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his claim or defense.

15. The State argues that, because Defendant's physical condition was at issue, he lost his privilege under this exception. According to this provision, however, the exception will apply only if the communication is relevant to an "element of [the patient's] claim or defense." *Id.* Here Defendant did not make a claim or offer a defense. He simply stated that he was not guilty of the charges, and it was the State's burden to prove the criminal charges beyond a reasonable doubt. *Cf. State v. Berry,* 324 So.2d 822, 827 (La.1975) (privilege waived where defendant raised affirmative defense of insanity), *cert. denied,* 425 U.S. 954, 96 S.Ct. 1731, 48 L.Ed.2d 198 (1976). Defendant had no elements of a claim or affirmative defense to prove whatsoever by simply raising a not guilty plea. *Elwell,* 567 A.2d at 1007 (litigant did not place condition at issue by pleading not guilty); *State v. George,* 223 Kan. 507, 575 P.2d 511, 517 (1978) (same). *But see State v. Tu,* 17 Ohio App.3d 159, 478 N.E.2d 830, 834 (1984) (not guilty plea placed defendant's physical condition at issue). If the exception were construed otherwise, the State could simply charge Defendant with a crime to obtain certain confidential information. *Elwell,* 567 A.2d at 1007. We hold that the plea of not guilty by Defendant did not constitute an element of Defendant's claim or defense.

16. Our holding today is limited to the question of whether Defendant's not guilty plea waived the privilege. We acknowledge, but do not decide, that under SCRA 11–

did not restrict intent to verbal manifestations, but instead stated that "[i]n the absence of words, there must be conduct, or if there be both words and conduct, such words and conduct together." *Lyman,* 503 P.2d at 1131. This was

how *In re Sherry C. & John M.* defined "intent" and this, we believe, is the proper definition. To the extent that *Doe* can be interpreted to require that intent must be expressed verbally, it is overruled.

504(D)(3) the physician-patient privilege may be deemed waived if a defendant testifies at trial and denies operating a motor vehicle while under the influence of alcohol. *See McVay v. State,* 312 Ark. 73, 847 S.W.2d 28, 31 (1993) (where defense was that defendant smelled like beer solely because he had spilled it, condition at issue and privilege waived); *State v. Alston,* 212 N.J.Super. 644, 515 A.2d 1280, 1281 (App.Div.1986) (defendant's testimony waived privilege because word "defense" signified facts that reduced crime charged, as well as facts that precluded conviction); Wigmore, *supra,* at § 2389 (a party's voluntary testimony to physical condition at issue should waive the privilege). That issue, however, is not before us in this appeal.

## III.  PUBLIC POLICY CONCERNS

17. In so holding, we are mindful of the severe drunk-driving problems in New Mexico. "Driving while intoxicated, with its great potential for serious injury or death, undeniably represents a reckless and inexcusable disregard for the rights of other members of the travelling public." *Dress,* 461 N.E.2d at 1318. We are also cognizant that other courts have gone so far as to actively read an unwritten exception into the privilege when determining that the public policy concerns of drunk driving outweigh the purpose of the privilege. *See Boysaw,* 532 N.E.2d at 157 (physician-patient privilege not designed to act as shield behind which patient would take refuge); *Tu,* 478 N.E.2d at 833; *Dress,* 461 N.E.2d at 1317. *But see Elwell,* 567 A.2d at 1007. Nonetheless, we cannot ignore the express language of the rule. *See Smorgala,* 553 N.E.2d at 675 (court is not free to propose amendment to rule that would deny privilege in drunk-driving cases).

18. We do note, however, that, despite the privilege of SCRA 11–504, the State is not left without measures to pursue its objective of getting drunk drivers off the road. First, if a suspected person refuses to disclose the results of a blood test and refuses to take any other test, the suspect automatically loses his license for a year under our implied consent statute. *See* § 66–8–111(B) (Repl.Pamp.1994). Second, if the trial court

should determine from other evidence of intoxication that a defendant was under the influence, that defendant will be charged with an aggravated DWI based on a refusal to perform the tests. *See* § 66–8–102(D)(3); *see also State ex rel. Schwartz v. Kennedy,* 120 N.M. 619, 904 P.2d 1044 (1995) (defendant subject to both license revocation and criminal penalty for driving while intoxicated; double jeopardy not implicated). Third, the State can prove violation of the drunk-driving statutes by other means, including confessions of the driver, testimony of witnesses, and officers' observations—all of which were available to the State in this appeal. Successful prosecution of DWI charges can be achieved without invading an individual's privacy and bodily integrity, which the privilege here seeks to protect.

## IV.  CONCLUSION

19. We hold that Defendant's conduct demonstrated an intent to keep the results of his blood test confidential. We also hold that Defendant did not place an element of his defense at issue by simply pleading not guilty. We therefore conclude that the results of the blood test were protected from disclosure under SCRA 11–504 and were properly suppressed. The trial court's judgment is therefore affirmed.

20. IT IS SO ORDERED.

DONNELLY and ALARID, JJ., concur.