This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-41800

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

Petitioner-Appellee,

v.

**JOANNA V.,**

Respondent-Appellant,

and

**FABIAN C.,**

Respondent,

**IN THE MATTER OF APRIL C.,
ESMERALDA C., RUBY C., and MARIA C.,**

Children.

Children, Youth & Families Department
Mary E. McQueeney, Childrens Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Assistant Childrens Court Attorney
Albuquerque, NM

for Appellee

Susan C. Baker
El Prado, NM

for Appellant

Laura K. Castillo
Hobbs, NM

Guardian Ad Litem

# MEMORANDUM OPINION

**IVES, Judge.**

**{1}** Respondent Joanna V. (Mother) appeals from the district court's termination of her parental rights as to April C., Esmeralda C., Ruby C., and Maria C. (Children). We issued a calendar notice proposing to affirm. Mother has filed a memorandum in opposition, which we have duly considered. Unpersuaded, we affirm.

**{2}** Our notice proposed to affirm based on our suggestion that there was sufficient evidence to support the district court's termination of Mother's parental rights, particularly regarding whether the Children, Youth and Families Department (CYFD) made reasonable efforts to assist Mother in adjusting the conditions that rendered her unable to properly care for Children [CN 8], and whether the causes and conditions that brought Children into custody were unlikely to change in the foreseeable future [CN 6]. In addition, our proposed disposition suggested that Mother failed to demonstrate the district court committed reversible error in considering the testimony of the doctor who completed Mother's psychological evaluation and Mother's therapist. [CN 13] In her memorandum in opposition, Mother asserts that the district court committed reversible error by "putting too much weight on [the] denial of the Texas [Interstate Compact on the Placement of Children (ICPC)]" when considering whether termination of Mother's parental rights was appropriate. [MIO 10] Mother also continues to assert that CYFD failed to establish by clear and convincing evidence that the causes and conditions of Mother's neglect were unlikely to change in the foreseeable future and that CYFD made reasonable efforts to assist her. [MIO 14] In addition, Mother continues to assert the district court committed reversible error by allowing privileged information to be used against her during the termination hearing. [MIO 14-20]

**{3}** We begin by addressing Mother's assertion of error with regard to the district court's consideration of the ICPC home assessment. Mother asserts that the ICPC does not apply to a biological parent under circumstances such as these, where Mother "moved just over the border into Texas for housing and employment purposes." [MIO 13] In support of this assertion, Mother cites to *In re Mary L.*, 1989-NMCA-054, 108 N.M. 702, 778 P.2d 449, in which the children were placed in the custody of the Human Services Department (HSD) following allegations that the father had abused the children, and the father was taken into police custody. *Id.* ¶ 3. HSD contacted the mother, who lived in another state and wanted custody of the children, but HSD withheld custody based on the mother's failure to comply with certain HSD-imposed requirements, including a home study. *Id.* ¶¶ 4-5. In support of its actions, HSD pointed to the ICPC, arguing that a home study was necessary in order to place the children with their mother. *Id.* ¶ 14. The *Mary L.* court rejected HSD's argument, stating that

HSD's "argument concerning the [ICPC] proceeds from the incorrect assumption that [HSD] properly had custody of the children, and placement with their mother was a foster placement." *Id.*

**{4}** Mother's assertion of error relies in part on language from *Mary L.* that states, "the [ICPC] expressly exempts from the placement requirements relinquishment of children to a natural parent in another state." [MIO 14] *Id.* ¶ 14. However, *Mary L.* also expressly provides that a parent in another state "is entitled to custody unless [HSD] can establish the noncustodial parent is unfit." *Id.* ¶ 12. In addition, we note that *Mary L.* actually declines to consider whether a home study was required under the ICPC because HSD did not properly have custody of the children—thereby negating any need to consider whether HSD could retain custody of the children pending a successful ICPC home study. *See id.* ¶ 14. We are therefore unpersuaded that *Mary L.* supports Mother's argument that she need not comply with CYFD's placement requirements because she moved out of state.

**{5}** Mother also asserts that she successfully completed her case plan, but "placement of Children back in Mother's custody was ultimately denied because Texas would not approve an ICPC for transfer of Children from New Mexico to Mother's home in El Paso." [MIO 11] This assertion, however, is not supported by the record. According to the district court's order, the motion for termination of Mother's parental rights was not "granted solely because the ICPCs on Mother were denied but because of why the ICPCs were denied," referencing the ICPC home assessment worker's "concerns with Mother's ability to protect . . . Children which is precisely why . . . Children came into foster care." [3 RP 748] Moreover, to the extent that Mother asserts that the district court's "decision to place substantial weight on the ICPC and Mother's housing situation, to the exclusion of her other successes under the treatment plan," [MIO 11] amounts to error, she functionally asks that this Court reweigh the evidence on appeal. We decline to do so. *See Clark v. Clark*, 2014-NMCA-030, ¶ 26, 320 P.3d 991 ("We will not reweigh the evidence nor substitute our judgment for that of the fact[-]finder." (alteration, internal quotation marks, and citation omitted)).

**{6}** Accordingly, we conclude that Mother has not demonstrated the district court erred by including the two failed ICPC home assessments in its consideration of whether to terminate Mother's parental rights to Children. *See State ex rel. Child., Youth & Fams. Dep't v. James M.*, 2023-NMCA-025, ¶ 27 n.5, 527 P.3d 633 (noting, in assessment of reasonable efforts, that CYFD did not seek the assistance of other states in which the father resided, pointing out that "[o]ur Legislature has facilitated interstate cooperation in assessing both the adequacy of housing and the ability to parent when placement of children out of state is contemplated by adopting the [ICPC]").

**{7}** We turn next to Mother's assertion that CYFD failed to prove by clear and convincing evidence that the causes and conditions that resulted in the removal of Children were unlikely to change in the foreseeable future. [MIO 14] Termination of parental rights is appropriate when

the child has been a neglected or abused child as defined in the Abuse and Neglect Act and the court finds that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by the department or other appropriate agency to assist the parent in adjusting the conditions that render the parent unable to properly care for the child.

NMSA 1978, § 32A-4-28(B)(2) (2005, amended 2022). "This Court will uphold the termination if, viewing the evidence in the light most favorable to the judgment, a fact finder could properly determine that the clear and convincing standard was met." *State ex rel. Child., Youth & Fams. Dep't v. Tammy S.*, 1999-NMCA-009, ¶ 13, 126 N.M. 664, 974 P.2d 158 ("It is [CYFD's] burden to prove the statutory grounds for termination by clear and convincing evidence.").

**{8}**     In her memorandum in opposition, Mother asserts that she complied with every aspect of her case plan and that the evidence in the case shows she was capable of reunification, but the district court "totally ignored these successes." [MIO 17] Mother also contends that "[h]er biggest challenge was housing, but given the current housing market, this alone was not a valid reason to terminate her parental rights." [*Id.*] Mother's assertions ignore the fact that the district court, in making its assessment, repeatedly emphasized that Mother had demonstrated a lack of protective capacity toward Children. [3 RP 748-51] As discussed in our proposed disposition, although Mother initially understood and complied with her case plan and was able to proceed to a trial home visit with Children [CN 3-4], the trial home visit ended abruptly when April C. was found in compromising circumstances similar to those that caused her to be taken into CYFD custody [CN 4]. Mother's progress in complying with her case plan after that was lost; she stopped attending therapy, no longer implemented the redirection skills she had demonstrated previously, and continuously discussed inappropriate topics with Children. [*Id.*] Mother testified to having been aware of various "red flags" regarding an adult male and that individual's interactions with Children and other minors, but paid them no heed. There was also testimony that Mother's therapy was important in overcoming the psychological issues that hindered her parenting. [CN 4-5]

**{9}**     We note that, despite Mother's assertion that she was capable of reunification, Children were in CYFD custody for more than two years [3 RP 748], and "the [district] court is not required to place [C]hildren indefinitely in a legal holding pattern, when doing so would be detrimental to [C]hildren's best interests," and the district court determined that it is in Children's best interests to terminate Mother's parental rights [3 RP 752]. *See State ex rel. Hum. Servs. Dep't v. Dennis S.*, 1989-NMCA-032, ¶ 7, 108 N.M. 486, 775 P.2d 252; *see also State ex rel. Child., Youth & Fams. Dep't v. Mafin M.*, 2003-NMSC-015, ¶ 24, 133 N.M. 827, 70 P.3d 1266 ("Because it is important for children to have permanency and stability in their lives, termination proceedings should not continue indefinitely."). Furthermore, "[p]arents do not have an unlimited time to rehabilitate and reunite with their children." *State ex rel. Child., Youth & Fams. Dep't v. Browind C.*, 2007-NMCA-023, ¶ 40, 141 N.M. 166, 152 P.3d 153 (internal quotation marks and citation omitted)). Accordingly, we conclude that the evidence in this case is

sufficient to support the district court's conclusion that Mother failed to address the conditions and causes that brought Children into custody and that there was no indication Mother would change those circumstances in the foreseeable future. *See State ex rel. Child., Youth & Fams. Dep't v. Keon H.*, 2018-NMSC-033, ¶ 53, 421 P.3d 814 (concluding substantial evidence supported the district court's findings that the causes of neglect and abuse were unlikely to change in the foreseeable future where the parent failed to perform the requirements of a treatment plan for two years). We therefore conclude that the evidence supports the district court's determination that the causes and conditions that brought Children into CYFD custody were unlikely to change in the foreseeable future.

**{10}** Mother also asserts CYFD failed to make reasonable efforts to assist her with obtaining housing in New Mexico and with visiting Children on weekends or in the evenings. [MIO 19-20] As discussed above, Mother's assertion that "housing was the biggest hindrance to reunification" is not supported by the record; instead, concerns regarding Mother's ability to protect Children hindered her reunification with Children. [MIO 19] As discussed in our proposed disposition, despite CYFD's efforts to facilitate treatment that would alleviate concerns regarding Mother's protective capacity, Mother failed to engage in therapy. [3 RP 748-50] Furthermore, CYFD made efforts to accommodate Mother's work schedule by offering to supervise visits outside of normal working hours and through Zoom, but Mother failed to respond to CYFD's attempts. [CN 8] Accordingly, we suggest that CYFD's efforts in this case were reasonable. *See State ex rel. Child., Youth & Fams. Dep't v. Laura J.*, 2013-NMCA-057, ¶ 39, 301 P.3d 860 ("That [the parent] did not fully participate in or cooperate with the services does not render [CYFD]'s efforts unreasonable."); *State ex rel. Child., Youth & Fams. Dep't v. Athena H.*, 2006-NMCA-113, ¶ 9, 140 N.M. 390, 142 P.3d 978 ("The Abuse and Neglect Act requires the treatment plan to be reasonable, not a guarantee of family reunification. Even with compliance, it may not achieve its goal."); *State ex rel. Child., Youth & Fams. Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 28, 132 N.M. 299, 47 P.3d 859 ("[O]ur job is not to determine whether CYFD did everything possible; our task is . . . to [determine] whether CYFD complied with the minimum required under the law.").

**{11}** Finally, we turn to Mother's assertion that the district court committed reversible error by allowing privileged evidence to be used against Mother during the termination hearing. [MIO 20] Specifically, Mother asserts she was induced to provide confidential information to her treatment providers due to her court ordered case plan, and CYFD should therefore be estopped from using confidential treatment information against Mother during the termination hearing. [MIO 22] Mother insists that her participation in the treatment plan—which required interaction with therapeutic service providers—was not voluntary and that she had no choice in the matter. [MIO 22] We review the admission of evidence under an abuse of discretion standard. *See In re Augustine R.*, 1998-NMCA-139, ¶ 11, 126 N.M. 122, 967 P.2d 462.

**{12}** At first blush, Mother's arguments appear to present an issue of first impression identified by this Court over thirty years ago: "whether and how the psychotherapist-patient privilege protects a parent's communications during treatment against disclosure

in an action to adjudicate neglect or abuse and in a proceeding to terminate parental rights." *State ex rel. Human Services Dept., In Matter of Termination of Parental Rights of Sherry C. & John M.*, 1991-NMCA-137, ¶ 23, 113 N.M. 201, 824 P.2d 341. This Court did not resolve the issue then, and it has not been resolved since then via precedent, statute, or rule. *See id.* ("Perhaps if and when the broader policy issue raised by this appeal arises again, the proper resolution will have been advanced by statute or court rule."). Unfortunately, as we will explain, we must again decline to resolve the issue because of the manner in which it has been litigated.

**{13}** In support of her position, Mother continues to rely on *In re Doe*, 1982-NMCA-115, ¶ 29, 98 N.M. 442, 649 P.2d 510, *overruled on other grounds by State v. Roper*, 1996-NMCA-073, 122 N.M. 126, 921 P.2d 322. *In re Doe* recognized, however, that "[c]ommunications between psychotherapists and patients are not ipso facto confidential." *Id.* ¶ 24; *see State v. Lucero*, 2023-NMCA-035, ¶ 19, 528 P.3d 762 (providing that "for a communication to be a confidential communication" protected by Rule 11-504 NMRA, "(1) the patient must intend the communication to be undisclosed to third parties; and (2) nondisclosure of the communication must further the interests the privilege is intended to protect" (internal quotation marks omitted)). A patient's intent that the communication remain confidential can be negated by their knowledge that the communication is subject to disclosure to a third party: "if a patient is told their communications with a doctor or therapist will be disclosed to a third party and the patient voluntarily proceeds with the consultation with that knowledge, they will be considered to have consented to or voluntar[ily] acquiesced in the disclosure." *Lucero*, 2023-NMCA-035, ¶ 21 (citing *State ex rel., Hum. Servs. Dep't, In re Termination of Parental Rights of Sherry C. & John M.*, 1991-NMCA-137, 113 N.M. 201, 824 P.2d 341).

**{14}** As noted in our proposed disposition, Mother signed at least one release of information so that CYFD could speak with Mother's therapist and monitor Mother's progress, and the district court's judgment adopting Mother's case plan explicitly stated that CYFD shall have access to "all records and reports relating to investigation, treatment, and/or education." [CN 10] We also suggested in our proposed disposition that the facts do not support Mother's contention that her communications were protected by Rule 11-504. [CN 11]

**{15}** In her memorandum in opposition, Mother has not adequately addressed several points. First, she has neither specified the testimony that she believes disclosed privileged information. Second, she has not supplemented the factual statement in her docketing statement by providing additional facts relevant to whether she was informed that her communications might be shared with CYFD and the district court. Third, she has not responded to our suggestion that some of her communications were exempt from privilege under Rule 11-504(D)(3) or that signing a release of information will have negated any "inten[t] the communication to be undisclosed to third parties." [CN 10] *See Lucero*, 2023-NMCA-035, ¶¶ 19, 21; *see also* Rule 11-504(D)(3) (stating that "no privilege shall apply concerning confidential communications made relevant to" a physical, mental, or emotional condition used as part of a claim or defense). Fourth, although Mother emphasizes that her participation in the treatment plan was not

voluntary—that she had no choice in the matter because her compliance was necessary for reunification with Children—[MIO 21-23] she has not supported this points with any evidence. And the arguments of counsel are no substitute for evidence.[1] *Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)).

**{16}** To the extent that the missing pieces in Mother's memorandum in opposition are due to gaps in the record, those gaps exist because Mother failed to object to the proffered testimony either before or during the termination hearing. *See Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 65, 146 N.M. 853, 215 P.3d 791 ("It is the duty of the appellant to provide a record adequate to review the issues on appeal."); *Reeves v. Wimberly*, 1988-NMCA-038, ¶ 21, 107 N.M. 231, 755 P.2d 75 ("Upon a doubtful or deficient record, every presumption is indulged in favor of the correctness and regularity of the trial court's decision, and the appellate court will indulge in reasonable presumptions in support of the order entered."). Instead, Mother presented her argument for the first time after the last termination hearing had been held. [3 RP 638, 643, 726]

**{17}** We conclude that Mother has failed to carry her burden of establishing the physician-patient privilege applied to Mother's communications with her therapeutic service providers in this case. *See id.* ¶ 18 ("[T]he party asserting the physician-patient privilege has the burden of establishing the privilege."); *see also State v. Mondragon*, 1988-NMCA-027, ¶ 10, 107 N.M. 421, 759 P.2d 1003 (stating that "[a] party responding to a summary calendar notice must come forward and specifically point out errors of law and fact," and the repetition of earlier arguments does not fulfill this requirement"), *superseded by statute on other grounds as stated in State v. Harris*, 2013-NMCA-031, ¶ 3, 297 P.3d 374. As such, we cannot say that the district court abused its discretion in allowing their testimony at the termination hearing.

**{18}** For the reasons stated in our notice of proposed disposition and herein, we affirm the termination of Mother's parental rights as to Children.

**{19} IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

---

[1]Even if such evidence existed in the record, it would only pertain to inducement—a consideration that is only relevant under *In re Doe* if the communications in question were, in fact, confidential. *See Lucero*, 2023-NMCA-035, ¶ 21 (stating that a "patient, having voluntarily consented to or acquiesced in the disclosure by their conduct, cannot claim the privilege").

**SHAMMARA H. HENDERSON, Judge**