The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>February 28, 2023</u>

**No. A-1-CA-38776**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JANICE LUCERO,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett Loveless, District Court Judge**

Raúl Torres, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Luz C. Valverde, Assistant Appellate Defender
Albuquerque, NM

# OPINION

**YOHALEM, Judge.**

{1}     Defendant Janice Lucero entered a conditional plea of guilty in metropolitan court to a first offense of driving under the influence of intoxicating liquor or drugs (DWI), contrary to NMSA 1978, Section 66-8-102 (2010, amended 2016). The charge arose out of a single-car rollover accident in which Defendant was injured. With her conditional plea, Defendant reserved the right to appeal the metropolitan court's denial of her motion to suppress what Defendant claims are physician-patient communications privileged under Rule 11-504 NMRA. The communication Defendant seeks to suppress is a conversation she had with an emergency medical technician (EMT) for the purpose of diagnosis or treatment,[1] during which Defendant disclosed, in answer to a question from the EMT, that she had consumed alcohol before driving. Defendant's communication to the EMT was overheard and recorded by a law enforcement officer who entered the ambulance where the conversation took place just after the EMT began questioning Defendant, and, according to Defendant, without her knowledge. The metropolitan court concluded

---

[1]The parties do not dispute whether the EMT was a "physician" as defined in Rule 11-504(A)(2), for purposes of the application of the physician-patient privilege. Further, although the State argued below that the questions regarding Defendant's alcohol consumption were not for the purpose of diagnosis or treatment, the State does not pursue this argument on appeal. We therefore assume without deciding that the EMT qualifies as a "physician" under the privilege and that the communications between Defendant and the EMT were for the purpose of diagnosis or treatment.

based on the circumstances that "it was unreasonable for . . . Defendant to believe her communication with the [EMT] was private and therefore the confidentiality requirement of the Doctor-Patient privilege was not met." The district court affirmed the metropolitan court's decision.[2] We conclude that the metropolitan court failed to apply the correct standard of law. We therefore reverse and remand to the metropolitan court to make the factual findings required under the correct principles of law.

{2}     Defendant also argues on appeal that she was denied due process of law by delay in the resolution of her appeal in the district court. Not persuaded by her due process argument, we affirm the district court's denial of Defendant's motion to dismiss.

**BACKGROUND**

{3}     The following evidence was adduced at a hearing in the metropolitan court on Defendant's motion to exclude from evidence at her DWI trial "any statements made

---

[2]At the time this action was filed, appeals from convictions for driving under the influence of intoxicating liquors or drugs in metropolitan court were taken to the district court and then from the district court to this Court. *See* NMSA 1978, § 34-8A-6 (1993, amended 2019). "For on-record appeals the district court acts as a typical appellate court, with the district judge simply reviewing the record of the metropolitan court trial for legal error." *State v. Trujillo*, 1999-NMCA-003, ¶ 4, 126 N.M. 603, 973 P.2d 855. "In subsequent appeals such as this, we apply the same standards of review employed by the district court." *State v. Bell*, 2015-NMCA-028, ¶ 2, 345 P.3d 342.

while being attended to by any health care professional," pursuant to physician-patient privilege, Rule 11-504

{4}     Defendant was in a single-vehicle rollover crash on January 18, 2015. Deputy Weeks was the first law enforcement officer to arrive at the scene of the accident. Deputy Weeks found Defendant still in her overturned, smoke-filled vehicle; he broke the vehicle's rear passenger-side window and Defendant was able to crawl out through the broken window.

{5}     With Deputy Weeks steadying her, Defendant walked across the road and sat on a curb. An ambulance arrived within a few minutes. Deputy Weeks told the paramedics that Defendant was having trouble walking and difficulty with speech. The paramedics immediately attended to Defendant, asking her if she was okay. Defendant told them that she had injured her right knee and that the pain was very bad. The paramedics got her onto a gurney and took her to the ambulance.

{6}     Deputy Cordova, who had arrived on the scene of the accident just before the ambulance, testified that when he got close to Defendant, he smelled alcohol near her face, her speech was slurred, and he saw vomit on her dress. Based on these observations and the fact that Defendant had been involved in a rollover crash, Deputy Cordova decided to pursue a DWI investigation. He followed the gurney to the ambulance.

{7}     When the gurney reached the ambulance, the paramedics loaded the gurney with Defendant on it, face up, into the bay of the ambulance through its open back doors. The bay of the ambulance was empty and Defendant and the EMT were briefly alone. Deputy Cordova entered through the side door of the ambulance immediately after Defendant was placed in the ambulance. The side door was behind Defendant, and Deputy Cordova testified he did not walk past her when he entered. The EMT had already started questioning Defendant. Almost immediately, Deputy Cordova heard the EMT ask Defendant how many drinks she had consumed. Defendant responded that she had "three Crown and Cokes."

{8}     About a minute or two after entering the ambulance, Deputy Cordova spoke for the first time. He asked Defendant if she had had anything to drink that night. Defendant did not immediately respond. Then she asked Deputy Cordova if he was recording. Deputy Cordova said, "Yes." Defendant was crying and did not answer him further. Deputy Cordova asked Defendant whether she would take a blood test for alcohol. Defendant did not respond. According to Deputy Cordova, she either began nodding off or pretended to be nodding off. Deputy Cordova took this as a refusal to answer his questions or, to consent to alcohol testing. Deputy Cordova placed her under arrest for DWI and the ambulance left to take her to the hospital.

{9}     At the hearing on Defendant's motion to exclude her communications to the EMT, Defendant testified to her belief that she was alone in the ambulance with the

4

EMT during the examination. Defendant described being in intense pain from her knee injury, said she did not hear the deputy's radio and was complaining about the pain to the EMT.

{10} Deputy Cordova was asked by the metropolitan court judge whether he had any indication that Defendant knew he had entered the ambulance. Deputy Cordova admitted that Defendant could not see him directly. He stated that he believed Defendant knew he was there given that he was only a few feet from her, the noise his radio made, her awareness that police officers were present at the accident scene, and his belief he was likely visible in her peripheral vision. He could not remember whether Defendant turned to look at him when he entered the ambulance.

{11} Deputy Cordova filed a criminal complaint charging Defendant with aggravated DWI, citing his observation of the smell of alcohol near Defendant, Defendant's bloodshot and watery eyes, her slurred speech, the vomit he saw on her dress, and Defendant's answer to the EMT's question during her medical examination telling the EMT that she had consumed "three Crown and Cokes."

{12} A few days after the suppression hearing, the metropolitan court announced its decision from the bench. The metropolitan court made the following findings of fact: (1) Defendant was conscious; (2) Defendant was alert and aware of her surroundings; (3) Defendant knew she was at an accident scene and officers were present on the scene; (4) Defendant complained only of knee pain, not of headache

or other head "actions"; (5) the doors to the ambulance were open and an officer was present; (6) Defendant was facing the rear doors and would have had to turn her head to talk to the EMT; (7) Deputy Cordova was two to four feet from Defendant; (8) Deputy Cordova was not hiding; and (9) Defendant should have been aware of who was present, should have closed the ambulance doors, and should have excluded any third party. The metropolitan court's written order denying Defendant's motion to exclude the allegedly privileged evidence states that "it was unreasonable for . . . Defendant to believe her communication with the [EMT] was private, and therefore the confidentiality requirement of the [physician-p]atient privilege was not met."

{13} Defendant entered a conditional guilty plea, preserving for appellate review the issue of whether her communication to the EMT made in an ambulance for the purpose of diagnosis or treatment was protected by the Rule 11-504 physician-patient privilege. Defendant filed her appeal to the district court on August 26, 2015. The district court affirmed the metropolitan court's denial of Defendant's motion to exclude evidence on December 4, 2019.[3] Defendant's appeal to this Court followed.

---

[3]Defendant claimed in the district court, and argues on appeal, that her due process right to a reasonably prompt decision on appeal was violated by the more than four-year delay in the issuance of the district court's appellate decision. The district court found no due process violation. We discuss the facts and law related to Defendant's due process issue as part of our analysis of that issue.

# DISCUSSION

**I.    Were Defendant's Communications for the Purposes of Diagnosis or Treatment Confidential Communications Protected by the Physician-Patient Privilege?**

**A.    Standard of Review**

{14}    Because Defendant does not challenge the metropolitan court's findings of fact, we assume that these facts are supported by substantial evidence in the record. Resolution of this appeal requires us to determine both whether the metropolitan court correctly construed the law of privileges, a question we review de novo, *see Allen v. LeMaster*, 2012-NMSC-001, ¶ 11, 267 P.3d 806, and whether the metropolitan court correctly applied that law to the circumstances of this case, a question which we also review de novo. *See Pacheco v. Hudson*, 2018-NMSC-022, ¶ 24, 415 P.3d 505 (explaining that whether specific communications are subject to a privilege is a mixed question of fact and law that is reviewed de novo on appeal).

**B.    The Physician-Patient Privilege, Rule 11-504**

{15}    Rule 11-504(B) describes the scope of the physician-patient privilege as follows:

> A patient has a privilege to refuse to disclose, or to prevent any other person from disclosing, a confidential communication made for the purpose of diagnosis or treatment of the patient's physical, mental, or emotional condition, including drug addiction, between the patient and the patient's physician, psychotherapist, or state or nationally licensed mental-health therapist.

{16} This appeal focuses on the definition of the term "confidential communication." Rule 11-504(A)(5) defines a "confidential communication" as a communication "made privately and not intended for further disclosure except to other persons in furtherance of the purpose of the communication." This appeal asks this Court to determine under what circumstances, if any, a communication between a physician and a patient, overheard by a third party, remains a "confidential communication" protected from disclosure.

{17} To understand what makes a communication a "confidential communication" protected by the privilege, we begin by reviewing the history and background of the Rule 11-504. In New Mexico, privileges are created and defined by either Supreme Court rule, statute, or our constitution. New Mexico's rules of evidence differ from the federal rules of evidence and those of many other states in that New Mexico does not recognize common law privileges: "New Mexico's approach to privileges is a special product of our state law jurisprudence." *Pub. Serv. Co. of N.M. v. Lyons*, 2000-NMCA-077, ¶ 12, 129 N.M. 487, 10 P.3d 166. We therefore look primarily to our Rule 11-504 precedent to guide our analysis.

{18} We are mindful, as well, that our goal is to interpret and apply Rule 11-504 so as to give effect to the purpose and intent of our Supreme Court. *See H-B-S P'ship v. Aircoa Hosp. Servs., Inc.*, 2008-NMCA-013, ¶ 10, 143 N.M. 404, 176 P.3d 1136. We interpret the rules adopted by our Supreme Court with logic and common sense

8

to avoid absurd results. *Walker v. Walton*, 2003-NMSC-014, ¶ 11, 133 N.M. 766, 70 P.3d 756. Finally, we note that the party asserting the physician-patient privilege has the burden of establishing the privilege. *See Pina v. Espinoza*, 2001-NMCA-055, ¶ 24, 130 N.M. 661, 29 P.3d 1062.

{19} The meaning of a confidential physician-patient communication protected by Rule 11-504 was first construed by this Court in *In re Doe*, 1982-NMCA-115, ¶ 24, 98 N.M. 442, 649 P.2d 510, *overruled on other grounds by State v. Roper*, 1996-NMCA-073, ¶ 12, n.3, 122 N.M. 126, 921 P.2d 322. *Doe*, later joined and clarified by *Roper*, have remained the leading cases construing New Mexico's physician-patient privilege for more than forty years. *In re Doe* and *Roper* hold that for a communication to be a "confidential communication" protected by the Rule 11-504 privilege, two conditions must be met: (1) the patient must intend the communication to be undisclosed to third parties; and (2) nondisclosure of the communication must further the interests the privilege is intended to protect. *See In re Doe*, 1982-NMCA-115, ¶¶ 22-24; *Roper*, 1996-NMCA-073, ¶ 11.

{20} In addressing the first prong of this two-part test—that the communication is not intended to be disclosed—Rule 11-504 focuses on the patient's intent: Does the patient intend the communication to be confidential? *See Roper*, 1996-NMCA-073, ¶ 11. *In re Doe* originally required the patient's intent that the communication not be disclosed to "be manifested in some fashion with words or words and conduct

9

[that] lead a [physician] to understand or believe that the information obtained was intended to be confidential." 1982-NMCA-115, ¶ 27. *Roper*, however, clarified this requirement, removing any suggestion that the patient must make an explicit request for confidentiality, and providing instead that the conduct of the patient in submitting to a private consultation or evaluation by a physician is sufficient circumstantial evidence to establish the patient's intent that the communication not be disclosed to others, absent the patient's consent. 1996-NMCA-073, ¶ 12 n.3. "[W]hen a patient is privately evaluated by a physician, the conduct of the patient agreeing to the evaluation in itself manifests an intent that any communication made for the purpose of diagnosis or treatment remain confidential." *Id.* ¶ 12.

{21} In *In re Termination of Parental Rights of Sherry C. & John M.*, 1991-NMCA-137, ¶ 12, 113 N.M. 201, 824 P.2d 341, this Court addressed when a patient's intent that the communication remain confidential is negated by their knowledge that the communication is subject to disclosure to a third party. The patient in *In re Sherry C. & John M.*, a parent working a treatment plan following an adjudication of abuse or neglect, had been informed before the therapy began that the results of her therapy would be shared with the Human Services Department and the district court. This Court applied the test adopted by *In re Doe* concluding that "the patient must intend the communications to be undisclosed," *In re Sherry C. & John M.*, 1991-NMCA-137, ¶ 24, and explaining that if a patient is told their communications with a doctor

or therapist will be disclosed to a third party and the patient voluntarily proceeds with the consultation with that knowledge, they will be considered to have consented to or voluntary acquiescede in the disclosure. *Id.* ¶ 25. The patient, having voluntarily consented to or acquiesced in the disclosure by their conduct, cannot claim the privilege. *Id.*

{22}    If the patient intends the communication to be confidential, our precedent applies a second test to determine if the privilege applies. *In re Doe* and *Roper* require a finding that "non-disclosure of the communication would further the interest of the patient." *In re Doe*, 1982-NMCA-115, ¶ 24; *Roper*, 1996-NMCA-075, ¶ 11 n.2. *Roper* clarifies that this prong of the test looks to whether the patient's interests are consistent with the privilege's purpose. 1996-NMCA-073, ¶ 11 n.2.[4] The recognized purpose of the privilege is to provide an assurance of confidentiality in order to "encourage a patient to make complete disclosures of [their] symptoms and conditions to a physician without fear of publication." *Id.* ¶ 6. The privilege represents a recognition that accurate diagnosis and appropriate medical treatment depend on a patient's willingness to disclose embarrassing, and even potentially

---

[4]Although acknowledging that this second prong of the *In re Doe* test is not mandated by the plain language of Rule 11-504, *Roper* holds that consideration of this second prong "irrespective of its derivation" is necessary to effectuate the purposes of the rule. *Roper*, 1996-NMCA-073, ¶ 11 n.2.

11

incriminating, information. *See* Rule 11-504(B) (applying the privilege to a patient's admission of drug addiction).

{23}   Recognizing the privilege's intent to protect even incriminating information, this Court in *Roper* refused to make an exception to the application of Rule 11-504 for drunk driving cases, something some other jurisdictions have done. *See Roper*, 1996-NMCA-073, ¶ 17 (citing cases from other jurisdictions). *Roper* explained that we are not free to disregard the express language of our rules of evidence when construing a privilege and that "[s]uccessful prosecution of DWI charges can be achieved without invading an individual's privacy and bodily integrity, which the privilege here seeks to protect." *Id.* ¶ 18.

**C.   Conduct or Statements Indicating Voluntary Acquiescence in the Presence of a Third Party Is Required to Negate the Privilege**

{24}   With this background, we turn now to the issue of first impression raised by this appeal: Under what circumstances does the presence of a third party, able to overhear a communication between a physician and a patient, negate the privilege?

{25}   The metropolitan court adopted an objective test: the communication is not protected by the privilege if a reasonable person *should have known* that a third party could overhear the communication. We conclude that the metropolitan court's objective test conflicts with Rule 11-504, as construed by our precedent.

{26}   As discussed previously, the application of the physician-patient privilege depends on whether the patient has an expectation that the communication will not

be disclosed, together with a showing that the purpose of the privilege is served by honoring the patient's expectation of confidentiality. *See Roper*, 1996-NMCA-073, ¶ 11. We emphasize that the first inquiry mandated by our precedent focuses on the patient's intent: not that of a hypothetical reasonable person. The test looks to the patient's state of mind: Did the individual involved have an actual expectation that their communication with a physician would remain confidential and would not be disclosed to others? *See In re Doe*, 1982-NMCA-115, ¶ 27. Although "[n]o objective standard exists to determine a person's state of mind," "[i]t is not sufficient for a patient to say that in the patient's mind the communications were confidential and furthered [their] own interest." *Id.* In other words, intent must be manifested through words or conduct that would lead the physician "to understand or believe that the information obtained was intended to be confidential." *Id.*; *see Roper*, 1996-NMCA-073, ¶ 12 n.3.

{27} In applying New Mexico's law of privilege, our courts examine the defendant's conduct to determine whether that conduct is consistent with an expectation that the communication will not be disclosed. *Roper*, 1996-NMCA-073, ¶ 12 n.3. We note that in addressing what conduct is sufficient to indicate an expectation of confidentiality, this Court in *Roper* rejected the requirement for an explicit statement and adopted an assumption that agreement to a private medical

examination or evaluation is sufficient evidence of the patient's intent that the communications be confidential and not be disclosed to third parties. *Id.* ¶ 12.

{28} Next, the patient's intent that the communication be confidential must be examined to determine whether it serves the purposes of the privilege. As we previously stated, the physician-patient privilege focuses on protecting a patient's privacy and autonomy in relating highly sensitive, personal matters concerning their physical or mental condition to a medical provider for purposes of diagnosis or treatment. *See id.* ¶ 13. The purpose behind this protection is to assure the patient that their communications will not be disclosed without their consent, so as to encourage the patient to speak fully and frankly to the medical provider without the fear of publication. *See id.* ¶ 6.

{29} Assuming the metropolitan court finds that Defendant intended the communication to be confidential, the remaining question that requires factfinding is whether Defendant voluntarily acquiesced in, or consented to, the disclosure. *In re Sherry C. & John M.* stands for the proposition that a patient who has actual knowledge that the communication will be disclosed, and voluntarily participates in the communication with that knowledge, has consented to or acquiesced in the disclosure of their physician-patient communication. *See* 1991-NMCA-137, ¶ 25. Whether this exception applies depends on a finding as to whether Defendant

14

actually knew of the law enforcement officer's presence, not whether she should have known.

{30}    We conclude the metropolitan court erred in adopting an objective test, focused on what a hypothetical reasonable person should have known. Rather, the metropolitan court should have looked to the purposes served by the privilege under the circumstances at issue here, and made findings of fact as to: (1) whether Defendant intended the communication to be confidential; (2) whether Defendant actually knew that Officer Cordova had entered the ambulance; and, if so, (3) whether Defendant's subsequent conduct was sufficient to constitute voluntarily consent to or acquiescence in the disclosure of her communications to Deputy Cordova. Because the metropolitan court's findings do not answer these questions, but instead look to whether Defendant "should have" known a law enforcement officer had entered the ambulance, we reverse and remand to allow the metropolitan court to make the necessary findings, and to apply the correct legal standard, as set forth in this opinion, to those findings.

**II.    Defendant Was Not Denied Due Process by Delay in District Court in Deciding Her Appeal**

{31}    Defendant contends that the four-year period between the filing of her notice of appeal and the district court's decision on appeal denied her due process on appeal. We do not agree.

15

{32} The delay in the district court occurred because Defendant's counsel filed two notices of appeal: one properly noticing an appeal from the metropolitan court to the district court, filed on August 26, 2015, and a second notice of appeal to this Court from the district court, filed on December 1, 2015. At the time Defendant's original notice of appeal was filed, appeals from convictions of DWI in the metropolitan court were properly taken to the district court. *See* § 34-8A-6. Only after the appeal was decided by the district court could a further appeal be taken to this Court. *See id.*

{33} Over four years after Defendant appealed to the district court, her defense counsel petitioned the court either for dismissal based on the delay in reaching a decision or for expedited consideration of Defendant's appeal. Defense counsel withdrew the improperly filed notice of appeal to this Court shortly after November 11, 2019. The district court then entered a decision on Defendant's appeal.

{34} Because Defendant presented no evidence that the delay prejudiced her, and because the district court's finding that the delay was attributable to Defendant rather than the government, is supported by substantial evidence, we affirm.

{35} We apply the framework established by *State v. Garcia*, 2019-NMCA-056, ¶ 46, 450 P.3d 418, to determine whether appellate delay violates a criminal defendant's right to due to process. We emphasized in *Garcia* that "not every delay in the appeal of a case, even an inordinate one, violates due process." *Id.* ¶ 41

16

(alteration, internal quotation marks, and citation omitted). Whether appellate delay is sufficiently egregious to violate a defendant's due process rights turns first on: (1) whether the delay has prejudiced the defendant, and, if so, (2) whether the government's responsibility for the delay and the nature and severity of the prejudice warrant dismissal. *Id.* ¶ 46.

{36}     This Court generally looks to two potential forms of prejudice: (1) prejudice to a defendant's ability to assert their claims on appeal, and (2) prejudice at trial or on resentencing following remand. *Id.* Defendant has claimed no prejudice on appeal or on remand from the delay, nor do we find any such prejudice. Defendant argues that she lost job opportunities because of the pendency of the appeal. She bases this claim, however, on argument of counsel, unsupported by facts. *See id.* ¶ 47 (holding that vague, speculative allegations of prejudice are insufficient). Even if this claim of job loss were somehow proved, it is not the type of prejudice found by this Court in *Garcia* to support a violation of due process. 2019-NMCA-056, ¶ 46. Defendant, therefore, has failed to establish prejudice. Moreover, even if Defendant had established prejudice, we see no error in the district court's finding attributing the delay to the failure of Defendant's counsel to follow the procedural rules governing appeals from metropolitan court.

{37}     Where no prejudice was established by Defendant, and the delay was caused by an error of defense counsel, Defendant was not denied due process.

**CONCLUSION**

{38} We reverse the denial of Defendant's motion to exclude from evidence her privileged communications with the EMT and remand to the district court for findings and decision on Defendant's motion to suppress consistent with this opinion.

{39} **IT IS SO ORDERED.**

              _____

              **JANE B. YOHALEM, Judge**

**WE CONCUR:**

_____

**JENNIFER L. ATTREP, Chief Judge**

_____

**KRISTINA BOGARDUS, Judge**